2017 ND 203

**STATE of North Dakota, Plaintiff and Appellee**

v,

**Robert John PULKRABEK, Defendant and Appellant**

No. 20160332

Supreme Court of North Dakota.

Filed 8/17/2017

Fallon M. Kelly, Ransom County State's Attorney, Lisbon, ND, for plaintiff and appellee.

Scott O. Diamond, Fargo, ND, for defendant and appellant.

VandeWalle, Chief Justice.

[¶1] Robert Pulkrabek appealed the district court's judgment after a jury found him guilty of theft of property. Pulkrabek argued the district court erred when it did not tell the jury it had to unanimously agree on which theory of theft it believed he committed beyond a reasonable doubt. We affirm.

I.

[¶2] In September 2014, sports memorabilia were taken from a trailer. A search

warrant was issued for Robert Pulkrabek's property in July 2015. During the execution of the search warrant, some of the stolen sports memorabilia were found in Pulkrabek's truck. Pulkrabek was subsequently charged with theft of property in violation of N.D.C.C. § 12.1-23-02. He was charged with a single count of theft for taking the stolen property and receiving the stolen property under § 12.1-23-02(1) and (3).

[¶3] During the jury trial, the prosecutor, defense counsel, and the district judge had a discussion about the jury instructions. The discussion pertained to the issues which arose from the State charging only one count of theft which incorporated both the taking and the reception of the property. In the end, the district court decided to combine the two pattern jury instructions into a single instruction. The jury instruction did not state the jury needed to be unanimous in their decision as to which act they believed Pulkrabek committed. However, the district court instructed the jury numerous times its verdict needed to be unanimous. After deliberation, the jury returned a verdict of guilty to the single count of theft of property.

[¶4] On appeal, Pulkrabek argues the district court erred by not instructing the jury it must unanimously decide upon which of the two theories it found him guilty.

## II.

[¶5] We first consider whether Pulkrabek properly preserved the issue for our review. Under N.D.R.Crim.P. 30(a), a party must request a jury instruction in writing. If a party fails to request the instruction in writing, the issue is not adequately preserved for appeal and this Court's review "is limited under N.D.R.Crim.P. 52(b) to whether the jury instructions constitute plain or obvious error," *State v. Martinez*, 2015 ND 173, ¶ 9, 865 N.W.2d 391; N.D.R.Crim.P. 30(d)(2). For an error to be obvious, the defendant must show that the error is plain and affects substantial rights. N.D.R.Crim. P. 52(b); *City of Mandan v. Sperle*, 2004 ND 114, ¶ 11, 680 N.W.2d 275. This Court exercises its "power to notice obvious error cautiously and only in exceptional circumstances when the accused has suffered serious injustice." *Sperle*, 2004 ND 114, ¶ 11, 680 N.W.2d 275 (citing *State v. Mathre*, 1999 ND 224, ¶ 5, 603 N.W.2d 173). Pulkrabek acknowledges he failed to object to the jury instructions in writing. Therefore, we are limited in our review to obvious errors.

[¶6] In *Martinez*, we stated:

Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. We view the instructions as a whole to determine if they correctly and adequately inform the jury. A court errs if it refuses to instruct the jury on an issue that has been adequately raised, but the court may refuse to give an instruction that is irrelevant or inapplicable.

2015 ND 173, ¶ 8, 865 N.W.2d 391 (internal quotes and citations omitted). "No person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." N.D.C.C. § 12.1-01-03(1).

[¶7] N.D.C.C. § 12.1-23-02 defines the crime of theft of property, and provides a person is guilty if the person:

1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;

2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; or

3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof.

[¶8] At Pulkrabek's trial, the jury instructions read, in the relevant parts: "the Defendant, Robert Pulkrabek, knowingly took or exercised unauthorized control over certain property, or knowingly received, retained, or disposed of certain property which had been stolen, namely items of sports memorabilia."

[¶9] Pulkrabek argues the district court should have advised the jury they must unanimously decide which of Pulkrabek's actions, the taking or receiving, it found him guilty of beyond a reasonable doubt. Pulkrabek alleges the instruction was incorrect because different jurors could have found he took the property, while other jurors could have found he received the stolen property.

[¶10] In 1973, North Dakota adopted its current criminal code contained in Title 12.1 of the North Dakota Century Code. One of the major changes in adopting our current criminal code came with the consolidation of the theft offenses in Chapter 12.1-23. *Minutes of Interim Comm. on Judiciary "B"* 36 (June 20-21, 1972). Section 12.1-23-01 sought to consolidate the numerous different types of thievery, i.e., false pretenses, larceny, and possession of stolen goods, into the single crime of theft. *Id.* The committee tasked with the development of the criminal code, Committee on Judiciary "B", heavily relied upon the proposed Federal Criminal Code. *State v. Bourbeau*, 250 N.W.2d 259, 264 (N.D. 1977). "As a result, pertinent language in Sections 12.1-23-01 and 12.1-23-02,

N.D.C.C., does not vary in substance from that of Sections 1731 and 1732 of the proposed Federal Code. In this light, we refer to the commentary of the draftsmen of the proposed Federal Code[.]" *Id.*

[¶11] In considering the consolidation statute, the Committee on Judiciary "B" read the following quote from LaFave & Scott into the minutes:

The fine distinctions between larceny, embezzlement and false pretenses are often difficult to make in a particular case. The principal beneficiary of the difficulty is the defendant who undoubtedly has misappropriated another's property in one of the three ways covered by the three crimes. The modern remedy is to consolidate these three separate crimes (perhaps including also the separate crimes of receiving stolen property, and blackmail or extortion) into one consolidated crime called 'theft.' Under this plan, one charged with 'theft' can be convicted whether the proof shows what was formerly larceny or embezzlement or false pretenses (or receiving, or blackmail or extortion).

*Minutes of Interim Comm. on Judiciary "B"* 39 (June 20-21, 1972) (quoting W. LaFave & A. Scott, *Criminal Law*, § 96, 673 (1972)).

[¶12] The legislature eventually adopted the consolidation of theft offenses in § 12.1-23-01, which states:

1. Conduct denominated theft in sections 12.1-23-02 to 12.1-23-04 constitutes a single offense designed to include the separate offenses heretofore known as larceny, stealing, purloining, embezzlement, obtaining money or property by false pretenses, extortion, blackmail, fraudulent conversion, receiving stolen property, misappropriation of public funds, swindling, and the like.

2. An indictment, information, or complaint charging theft under sections 12.1-23-02 to 12.1-23-04 which fairly apprises the defendant of the nature of the charges against him shall not be deemed insufficient because it fails to specify a particular category of theft. The defendant may be found guilty of theft under such an indictment, information, or complaint if his conduct falls under sections 12.1-23-02 to 12.1-23-04, so long as the conduct proved is sufficiently related to the conduct charged that the accused is not unfairly surprised by the case he must meet.

[¶13] The various crimes of theft of property, such as larceny, stealing, receiving stolen property, and swindling, were consolidated into one statute, § 12.1-23-02, which states:

1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;

2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; or

3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof.

[¶14] In *Bourbeau*, we examined the development of the theft statutes in North Dakota, including the reasoning behind having a consolidated statute rather than separate statutes for each variation of a "taking":

Consolidation of receiving and other forms of theft affords the same advantages as other aspects of the unification of the theft concept. It reduces the opportunity for technical defenses based upon legal distinctions between the closely related activities of stealing and receiving what is stolen. One who is found in possession of recently stolen goods may be either the thief or the receiver; but *if the prosecution can prove the requisite thieving state of mind it makes little difference whether the jury infers that the defendant took directly from the owner or acquired from the thief.*

*Id.* at 264 (emphasis in original) (quoting *II Working Papers of the Nat'l Comm'n on Reform of Federal Criminal Laws*, 933-934 (1970)). We also stated:

Between the two terms—between taking and exercising unauthorized control—all of the major forms of acquisitive behavior are meant to be covered, without inquiry into essentially irrelevant factors such as whether a caption or asportation has occurred, whether the defendant committed a trespassory taking or had custody of the property, and the like. The debate is meant to be shifted to the issue of whether the defendant had control over the property, and whether that control was authorized. These are the criminologically significant elements. The circumstances which led to the particular form of unauthorized control are relevant to his culpability—to the existence of the required mental elements and to the grading of the particular offense—but are not relevant to the issue of whether the objective conduct—the actus reus, to use the technical term—has occurred.

*Id.* at 264 (quoting *II Working Papers of the Nat'l Comm'n on Reform of Federal Criminal Laws*, 915 (1970)). The subsections of § 1732 of the proposed Federal Criminal Code are not meant to be separate, distinct crimes; rather the overlap "is intended to insure that everything which is now theft by any name [is] covered." *Final Report of the Nat'l Comm'n on Reform of*

*Federal Criminal Law*, § 1732 comment (1971). "The paragraphs do not differ otherwise in the elements which must be proved; the culpability requirement in each is 'knowingly. . . . with intent to deprive'. Section 1731 makes clear that theft need not be charged under any particular paragraph." *Id.* Additionally, the consolidation of theft benefits defendants as "treating theft as one offense precludes conviction of two offenses for the same conduct on the ground that the conduct falls within two theories of theft, *e.g.*, both taking and retaining the same property." *Final Report of the Nat'l Comm'n on Reform of Federal Criminal Law*, § 1731 comment (1971).

[¶15] It is clear that by adopting N.D.C.C. § 12.1-23-02 directly from § 1723 of the proposed Federal Code, the legislature intended the subsections of § 12.1-23-02 to be alternative means of committing the crime of theft and not separate, independent, elements. Pulkrabek's argument that the jury was required to agree upon which of his alleged actions occurred, the actual taking or receipt of stolen property, is contrary to the Federal Draftsmen's discussion in adopting the consolidated statute—"[o]ne who is found in possession of recently stolen goods may be either the thief or the receiver; but if the prosecution can prove the requisite thieving state of mind it makes little difference whether the jury infers that the defendant took directly from the owner or acquired from the thief." Nor does Pulkrabek's argument take into consideration the relationship among the three subsections. As the *Working Papers* express, the criminologically significant elements are "whether the defendant had control over the property, and whether the control was authorized," not which subsection the defendant's actions fall under. *II Working Papers of the Nat'l Comm'n on Reform of Federal Criminal Laws*, 915 (1970). Therefore, the subsections of N.D.C.C.

§ 12.1-23-02 are not separate elements of theft, but rather alternative means of meeting the actus reus element.

[¶16] Our conclusion is consistent with our prior analysis in *Sperle*, 2004 ND 114, 680 N.W.2d 275. In *Sperle*, the defendant was charged with disorderly conduct after an incident in a parking lot where she pushed and used vulgar language against an individual. *Id.* at ¶ 2. A Mandan city ordinance outlined numerous behaviors which it deemed disorderly conduct. *Id.* at ¶ 13. Instead of having separate charges for each of Sperle's alleged actions, there was a single charge and the jury instructions read in the relevant part:

> [Sperle] [e]ngaged in fighting, or in violent, tumultuous or threatening behavior; made unreasonable noise; used obscene language or made an obscene gesture in a public place; created a hazardous, physically offensive, or seriously alarming condition by any act which served no legitimate purpose; or otherwise engaged in harassing conduct by means of intrusive or unwanted acts, words, or gestures that were intended to adversely affect the safety, security, or privacy of another person[.]

*Id.* at ¶ 7. Sperle argued the jury instruction allowed the jury to convict her of the crime without all the jurors agreeing on which of the underlying actions constituted disorderly conduct beyond a reasonable doubt. *Id.* at ¶ 10. In determining whether the jury instructions violated Sperle's due process rights under the Fifth and Sixth Amendments, we quoted the following from the United States Supreme Court's analysis in *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991):

> We have never suggested that in returning general verdicts . . . the jurors should be required to agree upon a single means of commission[;] . . . different

jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.

. . .

Legislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes.

If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law.

*Sperle,* at ¶ 14 (quoting *Schad,* 501 U.S. at 632-33, 636, 111 S.Ct. 2491).

[¶17] We concluded the Mandan city ordinance "permitted the jury to find Sperle guilty of disorderly conduct through a number of alternative behaviors, any one of which is deemed disorderly conduct and none of which is exclusive." *Id.* at ¶ 15. We then looked at the record and determined a rational factfinder could conclude that Sperle had committed all of the behaviors, "any one of which was sufficient to constitute prohibited conduct and a violation of the ordinance." *Id.* Therefore, the district court did not err in submitting a general verdict form to the jury. *Id.*

[¶18] Similar to the disorderly conduct ordinance in *Sperle,* the North Dakota Legislature chose to enumerate alternative means of committing a theft, without intending to define separate elements or crimes. This is evidenced by not only the legislative history discussed above, but also by the language of the statute itself. Section 12.1-23-02, N.D.C.C., uses "or" to set apart both the separate subdivisions and the different actions within the subdi-

vision. Therefore, any action, in violation of the statute, is sufficient to justify a conviction under the statute, regardless of which subdivision it falls within. Upon review of the record, a rational factfinder could conclude that Pulkrabek knowingly took or exercised unauthorized control over certain property, or knowingly received, retained, or disposed of stolen property. Therefore, we find no error in the district court's instructions to the jury.

[¶19] Conversely, Pulkrabek argues our reasoning in *Martinez,* 2015 ND 173, 865 N.W.2d 391, is more applicable to this case than *Sperle.* In *Martinez,* the defendant was charged with three separate counts of gross sexual imposition. *Id.* at ¶ 2. The three counts were for three separate sexual acts against the same victim; the first taking place on a sofa, the second on a bunk bed, and the third in Martinez's bedroom. *Id.* The jury instructions provided to the jury on each of the three counts were essentially indistinguishable; no information on the verdict forms identified the underlying act for each of the counts. *Id.* at ¶ 13. The jury found Martinez guilty on one count and were unable to reach a verdict on the other two. *Id.* at ¶ 6. Martinez argued because the verdict forms provided no way to differentiate or distinguish between the counts it could not be guaranteed that the jury unanimously agreed on which of the three alleged actions he committed beyond a reasonable doubt. *Id.* at ¶ 7. We agreed. *Id.* at ¶ 21. In reaching our decision, we reasoned that "[w]hen the defendant is charged with multiple counts of the same offense, a lack of specificity in the jury instructions and the failure to include any distinguishing information about the allegations for each count misstates the law and may cause potential unanimity problems." *Id.* at ¶ 18. Furthermore, "the jury could follow all of the court's instructions and unanimously

agree Martinez was guilty, but disagree on the specific act or acts Martinez committed." *Id.* at ¶ 21.

[¶20] Pulkrabek believes this Court's analysis in *Martinez* is similar to his case because, although he was charged with only a single offense, there were multiple theories as to how he may have committed the theft. We disagree with Pulkrabek's reliance on *Martinez.* In *Martinez*, the State alleged Martinez committed three separate and distinct acts on three separate dates. While here, the State charged Pulkrabek with committing a theft, by either taking the items or receiving the stolen items, within a single, continuous, time period of September 6, 2014 – July 17, 2015. The State did not allege Pulkrabek committed multiple thefts, but rather, a single theft which occurred between two dates. Here, unlike in *Martinez*, the jury had to agree on the specific act Pulkrabek committed before finding him guilty of theft because, as discussed above, the specific act is having unauthorized control over property, not possession of stolen goods or personally taking the goods. Therefore, our analysis in *Martinez* is inapplicable to this case.

[¶21] Nor is our holding in conflict with our recent decision in *State v. Carson*, 2017 ND 196, 900 N.W.2d 41. In *Carson*, we discussed the difference between pleading guilty to possession of stolen goods and burglary, under § 12.1-23-02, for the purposes of restitution. We held Carson could not be held responsible for any restitution sought from the actual burglarizing of the home and only for the damages stemming from the possession of the stolen goods. *Id.* at ¶ 9. In reaching our decision, we stated:

> In analyzing whether to order restitution, N.D.C.C. § 12.1-32-08(1)(a) requires the district court to consider the "reasonable damages sustained by the victim." These damages "are limited to those directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action.

*Id.* at ¶ 6. We concluded that any damages from the burglary were not a "direct result" of Carson's possession of stolen goods and therefore, she could not be held liable for such restitution. *Id.* at ¶ 9. Our decision in *Carson* was based on the language of the restitution statute, not because of a division between burglary and possession of stolen goods within the consolidated theft statute.

[¶22] Drawing on the commentary of the Federal Criminal Code, as well as our own precedent, it is clear the subsections of § 12.1-23-02 are alternative means of completing the crime of "theft" and are not separate offenses. The jury was not required to unanimously agree upon which of the State's theories, Pulkrabek taking the property himself or Pulkrabek receiving the property, it believed the State proved beyond a reasonable doubt. Therefore, the district court did not err in combining subsections (1) and (3) of § 12.1-23-02 into one jury instruction.

### III.

[¶23] We affirm the district court's judgment entered after a jury found Pulkrabek guilty of theft under N.D.C.C. § 12.1-23-02.

[¶24] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner, S.J.

Lisa Fair McEvers

Daniel J. Crothers

John T. Paulson, S.J.

[¶25] The Honorable John T. Paulson, S.J., sitting in place of Tufte, J., disqualified.

[¶26] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.