# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 152

State of North Dakota,

Plaintiff and Appellee

v.

Arthur Prince Kollie,

Defendant and Appellant

## No. 20220343

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John C. Irby, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Ryan J. Younggren (argued), Katherine M. Naumann (on brief), and Nicholas S. Samuelson (appeared), Assistant State's Attorneys, Fargo, N.D., for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]   Arthur Kollie appeals from a criminal judgment entered after a jury found him guilty of murder, robbery, and aggravated assault. Kollie argues his rights to a public trial and against double jeopardy were violated and the district court erred in instructing the jury and admitting a video of the victim. We affirm.

I

[¶2]   On June 4, 2021, Jane Doe was walking from her father's home to her mother's home in south Fargo when she was attacked in an alley. A truck driver driving through the alley saw Jane Doe lying on the ground, unconscious, with Kollie beside her with one hand on her throat and the other hand pinching her nose. Both Jane Doe and Kollie were covered in bloodstains. The truck driver called 911 and approached Kollie. After the truck driver told Kollie that he "need[ed] to wait for the cops," Kollie "took off," fleeing the scene. The medical examiner testified that Jane Doe was stabbed 25 times then strangled. Jane Doe died three days later. The autopsy report listed the cause of death as asphyxia by strangulation, complicated by multiple sharp force injuries. Kollie was charged with murder, robbery, and aggravated assault. The jury found him guilty on all three counts. The district court sentenced Kollie to life imprisonment without the possibility of parole.

II

[¶3]   Kollie argues his constitutional rights to a public trial were violated when the district court held several bench conferences, or sidebars, within view of the public, but outside the hearing of the public and without an adequate record being made available.

[¶4]   In criminal prosecutions, the accused shall have the right to a public trial. U.S. Const. amend. VI; N.D. Const. art. I, § 12. Kollie concedes he did not preserve the public trial issue by objecting at trial. Thus, we review only for

obvious error. *State v. Davis-Heinze*, 2022 ND 201, ¶ 8, 982 N.W.2d 1. To demonstrate obvious error, the defendant must show (1) an error, (2) that was plain, and (3) affected his substantial rights. *Id.* at ¶ 6. However, because the doctrine of structural error applies to certain Sixth Amendment rights, including the public trial right, "[w]hen a claim of structural error is reviewed under the obvious error standard, the defendant need not demonstrate that the error affected the defendant's substantial rights or the trial's outcome because structural errors 'defy analysis by "harmless-error" standards.'" *Id.* at ¶ 7 (quoting *State v. Pulkrabek*, 2022 ND 128, ¶ 7, 975 N.W.2d 572).

[¶5]   As a threshold question, we must determine whether these sidebars were closures implicating the public trial right. *State v. Pendleton*, 2022 ND 149, ¶ 4, 978 N.W.2d 641. "We have said that brief sidebars or bench conferences conducted during trial to address routine evidentiary or administrative issues outside the hearing of the jury ordinarily will not implicate the public trial right." *Id.* at ¶ 6. "For example, routine evidentiary rulings, objection rulings, or '[m]atters traditionally addressed during private bench conferences or conferences in chambers generally are not closures implicating the Sixth Amendment.'" *Id.* (quoting *State v. Martinez*, 2021 ND 42, ¶ 20, 956 N.W.2d 772). We have also said, "Where a bench conference is held in view of both the public and the jury, despite their inability to hear what is said, the public trial right is satisfied by prompt availability of a record of those proceedings." *State v. Morales*, 2019 ND 206, ¶ 17, 932 N.W.2d 106.

[¶6]   In *State v. Frederick*, we clarified our public trial jurisprudence. 2023 ND 77, 989 N.W.2d 504. The appellant bears the burden to demonstrate the public was excluded from a proceeding to which the public had a right to be present. *Id.* at ¶ 7. "An inadequate record is not equivalent to a closed trial." *Id.* at ¶ 10. "While a district court's failing to preserve a record of testimony and proceedings may be error, it is not structural error." *Id.* at ¶ 11. Accordingly, a sidebar addressing routine evidentiary or administrative matters during trial, even without an adequate record, is not a closure implicating the public trial right. *Id.* at ¶¶ 10, 20-21. With these principles in mind, we turn to the alleged violations.

[¶7]   Kollie argues that nine sidebars constituted courtroom closures. The first five sidebars complained of occurred during voir dire. The first sidebar was initiated by the district court after the State finished questioning prospective jurors, but prior to the defense beginning its questions. The transcript shows that although the sidebar was "on the record," what was said was "Indiscernible." Based on the context, the sidebar likely concerned scheduling. However, without a more complete record, this Court is left to assume the content of the discussion. The second sidebar, partially indiscernible, was called for by the State in response to the defense's questioning and commenting on criminal responsibility. During the sidebar, defense counsel confirmed that he understood the State's concern and that he would "stay away from it." The third sidebar, partially indiscernible, arose after the State asked to approach during the defense's questioning concerning whether the prospective jurors would accept a jury instruction on a lack of criminal responsibility defense. After the sidebar, the court adjourned for the day. Thus, an inference can be drawn that this sidebar dealt, in part, with a scheduling matter. Without a complete record, we cannot discern whether part of the sidebar involved an objection to the defense's questioning and discussion.

[¶8]   The fourth sidebar was initiated by the district court after the defense was questioning a prospective juror about a hardship he was experiencing by missing time at his job. After the sidebar ended, the court went back on the record and excused the prospective juror from jury service. Similarly, the fifth sidebar came after the defense was questioning a prospective juror concerning a work trip which would cause a hardship. After the sidebar, the court more extensively questioned the prospective juror about the trip before excusing her due to hardship.

[¶9]   On the fifth day of the trial, the district court called a sidebar prior to the State's direct examination of the detective who interviewed Kollie about the incident. Although partially indiscernible, it appears defense counsel objected to certain exhibits coming into evidence. The court then inquired about further objections on the record in open court. Thus, this sidebar appears to involve the court either ruling on objections or clarifying past rulings on objections or arguments.

[¶10] On the seventh day of trial, the State objected to the defense's question eliciting the educational background of a lay witness and asked to approach. The sidebar was held off the record. After being back on the record, the district court overruled the State's objection. Later that day, defense counsel objected after a witness mentioned Kollie's probation and asked to approach. After a sidebar off the record, the court instructed the jury to disregard the reference to probation. Thus, a reasonable inference is that the defense asked the court to strike that portion of the witness's answer, which the court granted. The last sidebar occurred off the record just after the State rested its rebuttal case. Back on the record, the court sent the jury home for the day and then stated it would be addressing final jury instructions after a lunch break. The context suggests this sidebar addressed scheduling matters.

[¶11] We conclude Kollie has failed to show these sidebars constitute courtroom closures. At all times, the public was able to observe the sidebars. The public was not asked to leave the courtroom or prevented from entering the courtroom. *See Frederick*, 2023 ND 77, ¶ 20. Although what was said at the nine sidebars is either partially or completely absent in the record, the context provides some insight as to the substance of the sidebars. Based on the context, the sidebars appear to address routine evidentiary rulings, objection rulings, or administrative matters such as scheduling.

[¶12] To the extent that Kollie argues the context does not provide enough information on what was discussed, he has failed to state what was discussed at the sidebars or taken any measures to supplement or reconstruct the record. "A defendant must object to a district court's failure to preserve the substance of a bench conference on the record." *Frederick*, 2023 ND 77, ¶ 12. Because Kollie did not object to the district court's failure to preserve the substance of the sidebars on the record, we review this forfeited error under the obvious error standard of review. *Id.* "To demonstrate that an inadequate record affects a defendant's substantial rights, the defendant must demonstrate the record cannot be adequately supplemented or reconstructed." *Id.* at ¶ 13. Under N.D.R.App.P. 10(f), "If a transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."

4

[¶13] The district court erred by failing to either adequately record the sidebars or summarize the sidebars on the record and then allowing the parties the opportunity to confirm or correct the court's summary. *Frederick*, 2023 ND 77, ¶ 21. Kollie, however, failed to "supplement or reconstruct the record under N.D.R.App.P. 10(f) in order to demonstrate prejudice." *Id.* Because he has only shown the court failed to make an adequate record, Kollie "has not demonstrated how the error affected his substantial rights, nor has he shown the bench conference addressed any matters implicating his right to a public trial as distinguished from routine evidentiary or administrative issues." *Id.* Thus, we conclude Kollie has failed to establish that the court's failure in creating a record of the sidebars was an obvious error requiring reversal or that his constitutional rights to a public trial were violated.

## III

[¶14] Kollie argues the district court erred in instructing the jury on the murder count. We review jury instructions "as a whole to determine whether they correctly and adequately advise the jury of the applicable law even if part of the instruction standing alone may be insufficient or erroneous." *State v. Gaddie*, 2022 ND 44, ¶ 6, 971 N.W.2d 811. Because Kollie did not object to the instructions, we review for obvious error. *Id.* at ¶ 4.

[¶15] Under N.D.C.C. § 12.1-16-01(1), "A person is guilty of murder, a class AA felony, if the person: (a) Intentionally or knowingly causes the death of another human being; (b) Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life; or (c) . . . commits [felony murder]." The jury instructions defined murder as "A person who intentionally or knowingly causes the death of another human being is guilty of murder or if the person willfully causes the death of another human being under circumstances manifesting extreme indifference to the value of human life." The instructions provided the essential elements of the offense:

> The State's burden of proof is satisfied if the evidence shows beyond a reasonable doubt, the following essential elements:

5

1) On or about June 4, 2021, in Cass County, North Dakota, the Defendant Arthur Prince Kollie, caused the death of [Jane Doe], a human being; and

2) Either:

   a) The Defendant intentionally or knowingly caused the death of [Jane Doe]; or

   b) The Defendant willfully caused the death of [Jane Doe] under circumstances manifesting extreme indifference to human life.

Kollie contends that because the definition section combined N.D.C.C. § 12.1-16-01(1)(a) and (b)—2(a) and 2(b) of the essential elements—he was not assured of a unanimous verdict on the murder charge. Essentially, he asserts that some jurors could have found he intentionally or knowingly caused the death of Jane Doe and other jurors could have found he willfully caused the death of Jane Doe under circumstances manifesting extreme indifference to human life.

[¶16] In *City of Mandan v. Sperle*, we concluded the district court did not err in submitting a general verdict form to the jury that did not require the jury to unanimously find which subsection of the city ordinance defining disorderly conduct the defendant had violated. 2004 ND 114, ¶ 15, 680 N.W.2d 275. Because the ordinance allowed the jury to find the defendant guilty "through a number of alternative behaviors, any one of which is deemed disorderly conduct and none of which is exclusive," the general verdict form was appropriate. *Id.* In *State v. Pulkrabek*, we concluded that the district court did not err in combining subsections of the theft of property statute into one jury instruction. 2017 ND 203, ¶ 22, 900 N.W.2d 798. We stated that "it is clear the subsections of § 12.1-23-02 are alternative means of completing the crime of 'theft' and are not separate offenses. The jury was not required to unanimously agree upon which of the State's theories, Pulkrabek taking the property himself or Pulkrabek receiving the property, it believed the State proved beyond a reasonable doubt." *Id.* Similarly, in *State v. Gardner* we concluded, "The jury was not required to unanimously agree upon which of the two

6

alternative means of committing child abuse—Gardner inflicting bodily injury or Gardner allowing bodily injury to be inflicted—it believed the State proved beyond a reasonable doubt." 2023 ND 116, ¶ 19.

[¶17] The plain language of N.D.C.C. § 12.1-16-01(1) shows murder is one offense that has alternative, nonexclusive means of committing the offense, as noted by the use of "or" in the statute. *Pulkrabek*, 2017 ND 203, ¶ 18 (stating that "or" is used in the theft statute to "set apart both the separate subdivisions and the different actions within the subdivision"); *Gardner*, 2023 ND 116, ¶ 18 (noting child abuse statute "uses 'or' to set apart the two nonexclusive means of committing child abuse"). Because either of the several means is sufficient to commit the crime of murder—intentionally or knowingly causing the death of another *or* willfully causing the death of another under circumstances manifesting extreme indifference to human life—the jury unanimously found Kollie guilty of murder, even if individual jurors may have found Kollie committed the offense under different subdivisions. If the legislature intended to create separate offenses for intentional murder and extreme indifference murder, it would not have listed them as alternative means of committing "murder" under N.D.C.C. § 12.1-16-01(1). Thus, we conclude the district court did not err in instructing the jury on the offense of murder.

IV

[¶18] Kollie argues that his murder and aggravated assault convictions violate the double jeopardy clauses of the state and federal constitutions and N.D.C.C. § 29-01-07. He asserts that aggravated assault is a lesser included charge of murder and that one of the two convictions must be vacated.

[¶19] The double jeopardy provisions of the federal and state constitutions and state statute guarantee that a person may not "be twice put in jeopardy" for the same criminal offense. U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."); N.D. Const. art. I, § 12 ("No person shall be twice put in jeopardy for the same offense."); N.D.C.C. § 29-01-07 ("No person can be twice put in jeopardy for the same offense."). "The constitutional guarantee against double jeopardy encompasses three separate protections: protection against a second

7

prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense." *State v. Moos*, 2008 ND 228, ¶ 13, 758 N.W.2d 674. We apply de novo review to constitutional issues, including double jeopardy claims. *State v. Borland*, 2021 ND 52, ¶ 5, 956 N.W.2d 412.

[¶20] "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also State v. Bertram*, 2006 ND 10, ¶ 14, 708 N.W.2d 913 (applying "same elements" or *Blockburger* test). Under this test, the offenses are different if "each offense contains an element not contained in the other." *Peterka v. State*, 2015 ND 156, ¶ 9, 864 N.W.2d 745. The jury instruction setting out the elements of the murder charge required proof Kollie "intentionally or knowingly caused the death" or "willfully caused the death … under circumstances manifesting extreme indifference to human life." One of the essential elements of aggravated assault in this case was proof beyond a reasonable doubt that Kollie "[k]nowingly caused bodily injury or substantial bodily injury … [w]ith a dangerous weapon, namely, a knife." *See also* N.D.C.C. § 12.1-17-02(1)(b). Each offense requires proof of an element the other lacks. The murder charge required that Kollie caused the death of the victim, either intentionally or knowingly or willfully, under circumstances manifesting extreme indifference to human life. The aggravated assault charge did not require intentionally, knowingly, or willfully causing death. It did, however, require proof of a dangerous weapon. Thus, these offenses contain different elements and are not the same offense. We do not address Kollie's remaining double jeopardy arguments because they depend on aggravated assault and murder being the same offense for double jeopardy purposes. *See United States v. Good Bird*, 197 F.3d 1203, 1204-05 (8th Cir. 1999); *State v. Washington*, 540 S.E.2d 388, 398-99 (N.C. Ct. App. 2000); *State v. Tricomo*, No. 47238-4-II, 2016 Wash. App. LEXIS 849, at *10 (Apr. 26, 2016). Accordingly, we conclude that Kollie's constitutional and statutory rights against double jeopardy were not violated.

[¶21] Kollie argues the district court erred in admitting a video of Jane Doe under N.D.R.Ev. 401 and 402. "We review a district court's evidentiary ruling under an abuse-of-discretion standard." *State v. Chase*, 2015 ND 234, ¶ 7, 869 N.W.2d 733. A court abuses its discretion when it "acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law." *Id.*

[¶22] During direct examination of Jane Doe's father, the State offered Exhibit 84, which the attorney for the State stated was a short video of Jane Doe speaking about "her view on life." Counsel for the State explained the jury had only seen Jane Doe in "grainy video across the parking lot that doesn't really humanize who she was and how she may have interacted with other people." Defense counsel objected under N.D.R.Ev. 401 and 403. The district court overruled the objection and received the video into evidence, citing N.D. Const. art. I, § 25, which protects the rights of crime victims.

[¶23] "Irrelevant evidence is not admissible." N.D.R.Ev. 402. Under N.D.R.Ev. 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The State does not argue which fact of consequence the video made more or less probable with its admission. Nor do we discern any fact at issue that the video made more or less probable. Thus, we are left to rely on the State's initial assertion of its purpose, which was to "humanize" Jane Doe in presenting its case before the jury. We conclude use of the video for this purpose is improper and should have been excluded as irrelevant evidence in this criminal trial.

[¶24] The State argues the video was appropriately admitted under N.D. Const. art. I, § 25(1)(a), which guarantees crime victims the "right to be treated with fairness and respect for the victim's dignity." Under N.D. Const. art. I, § 25(4), "If a victim is deceased, . . . the victim's spouse, parent, grandparent, child, sibling, grandchild, or guardian, and any person with a relationship to the victim that is substantially similar to a listed relationship, may also exercise these rights." None of these individuals exercised § 25(1)(a) rights on behalf of Jane Doe with respect to the video admission. Instead, the district

court asserted the crime victim's rights. Section 25 does not provide for the court's enforcement of a crime victim's rights on behalf of a deceased victim absent the assertion by an individual listed under § 25(4). *See Cleveland v. Alrefaei*, 2020-Ohio-5009, 161 N.E.3d 53, ¶ 89 (8th Dist.) (Boyle, J., concurring) (noting trial court erred in her view when it asserted crime victims' rights without knowing the victims' wishes); *see also State v. Montgomery*, 169 Ohio St.3d 84, 2022-Ohio-2211, 202 N.E.3d 616, ¶¶ 10-14 (cautioning courts to refrain from reading more into crime victims' rights beyond the language of the constitutional provisions). Because the court may not invoke section 25 rights on behalf of a victim and no individual exercised the victim's rights on her behalf, we conclude the court erred in admitting the video under N.D. Const. art. I, § 25(1)(a). We need not decide here whether, if the victim's rights were properly invoked, the video would have otherwise been admissible under the Constitution or the Rules of Evidence.

[¶25] An erroneous evidentiary ruling, however, "shall be disregarded as harmless error under N.D.R.Crim.P. 52(a) if it does not affect substantial rights of the defendant." *City of Fargo v. Erickson*, 1999 ND 145, ¶ 13, 598 N.W.2d 787. The explanatory note to N.D.R.Crim.P. 52 provides, "To determine whether error affecting substantial rights of the defendant has been committed, the entire record must be considered and the probable effect of the error determined in the light of all the evidence." When evaluating the likely effect of a trial error, we determine "whether the error was so prejudicial that substantial injury occurred and a different decision would have resulted without the error." *State v. Rende*, 2018 ND 33, ¶ 7, 905 N.W.2d 909 (quoting *State v. Schimmel*, 409 N.W.2d 335, 339 (N.D. 1987)). Kollie states that the video was prejudicial, but fails to argue how it was prejudicial or the probable effect of the video in light of the rest of the evidence, let alone argue that the result would have been different. Given the weight of the evidence against him—particularly the testimony of the truck driver describing Kollie's actions at the scene—we conclude that the admission of a short video showing the victim when she was alive was harmless error under N.D.R.Crim.P. 52(a).

## VI

[¶26] The criminal judgment is affirmed.

[¶27] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr