IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2023 ND 82

State of North Dakota,                                          Plaintiff and Appellee

v.

Travis Edward Smith,                                          Defendant and Appellant

No. 20220162

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Ryan J. Younggren (argued), Nicholas S. Samuelson (on brief), and Tracy A. Gompf (on brief), Assistant State's Attorneys, Fargo, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**State v. Smith**
**No. 20220162**

**McEvers, Justice.**

[¶1]   Travis Smith appeals from a criminal judgment entered after a jury found him guilty of aggravated assault. Smith argues questions from the State during trial amounted to prosecutorial misconduct and burden shifting. Smith further argues the district court violated his constitutional right to a public trial, and abused its discretion by admitting cumulative and improperly noticed expert testimony. We affirm.

I

[¶2]   On July 6, 2021, Travis Smith arrived at Corinth Booker's apartment wet from the rain. Booker let Smith in and gave him a change of clothes. An argument ensued and Booker demanded Smith leave his apartment. Smith shoved Booker, resulting in a fight. Smith stabbed Booker multiple times with a knife. The altercation was captured on a video camera in Booker's home. Smith fled on foot and discarded the knife used to stab Booker.

[¶3]   Smith was charged with aggravated assault committed with a deadly weapon. A jury trial was held in April 2022. Booker testified about the night of the altercation. The State also called Dr. Joshua Gebur as an expert to testify about Booker's injuries. Throughout the trial, the district court held several unrecorded sidebars.

[¶4]   Smith testified he was acting in self-defense when he stabbed Booker. He also testified he discarded the knife while fleeing from the altercation. During cross-examination, the State asked, "Now that knife is awfully important if you're trying to prove your innocence here, isn't it?" Defense counsel objected. The prosecutor rephrased the question. Counsel objected. The objection was sustained. The jury found Smith guilty of aggravated assault. Smith appeals.

## II

[¶5]   Smith argues the State's questioning of Smith about discarding the knife amounted to prosecutorial misconduct and burden shifting.

[¶6]   We first address the alleged prosecutorial misconduct and determine the appropriate standard of review. Smith argues claims of prosecutorial misconduct are reviewed de novo. Smith is correct if he made this argument in the district court. *See State v. Bazile*, 2022 ND 59, ¶ 5, 971 N.W.2d 884 (applying de novo standard of review when a defendant moves for mistrial on the basis of prosecutorial misconduct). The State argues Smith did not assert prosecutorial misconduct at trial, and therefore the obvious error standard applies. *See State v. Vondal*, 2011 ND 186, ¶ 12, 803 N.W.2d. 578.

[¶7]   During cross-examination of Smith the following exchange occurred:

Q:     [By Mr. Younggren] You got rid of the knife?

A:     Yeah, I dropped it shortly after I left.

Q:     You ditched it?

A:     No, I – I dropped it. You could say I ditched it. I wasn't trying to hold onto the knife any longer as soon as I got a safe distance away from the apartment building.

Q:     Now that knife is awfully important if you're trying to prove your innocence here, isn't it?

A:     I wasn't thinking I would have to –

MS. BRAINARD: Objection, Your Honor, my client doesn't have to prove –

THE COURT:     Objection is –

A:     – prove my innocence at the time.

MS. BRAINARD: – his innocence.

THE COURT:     Objection – hold tight, sir. Just hold tight.

Objection sustained as to the form of the question. You may proceed, Mr. Younggren.

MR. YOUNGGREN:     Okay.

BY MR. YOUNGGREN:

Q:     If we had that knife, that would have been –

THE COURT:     The question's stricken from the record. You may proceed.

BY MR. YOUNGGREN:

Q:     That would have been very important, wouldn't it have, sir?

A:     I'm not sure why. I mean –

Q:     So if you were trying to – if you, sir, were trying to, as you've said here, show self-defense in this case – or describe, as you've described it as self-defense –

A:     Yes, sir.

Q:     – that would be great to have that knife, would it not?

A:     For what purpose?

MS. BRAINARD: Objection, cause for speculation and legal conclusion.

BY MR. YOUNGGREN:

Q:     The same reason that you got –

MR. YOUNGGREN:     Oh, sorry.

THE COURT:     Counsel can approach; both parties please.

4

(Counsel approached the bench, the following occurred: [off the record bench conference][1])

(Counsel returned to the trial tables, and the following occurred in open court:)

THE COURT:     Thanks, folks. The objection is sustained.

## A.

[¶8]   Smith did not assert prosecutorial misconduct in the district court. While he objected to the State's questions, prosecutorial misconduct was not mentioned, and Smith did not move for a mistrial. This Court has held that a party must make a specific objection to evidence at the time it is offered so that the opposing party may have an opportunity to argue the objection, and to give the district court an opportunity to appropriately rule on it. *State v. Samaniego*, 2022 ND 38, ¶ 15, 970 N.W.2d 222. In *Samaniego,* the defendant objected at trial to questioning by the State asserting evidentiary violations in cross-examination, and on appeal alleged the questioning was prosecutorial misconduct. *Id.* at ¶ 14. This Court noted the district court did not have the opportunity to rule on whether the questioning was a violation of the defendant's right to remain silent. *Id.* at ¶ 15. As in *Samaniego,* the district court had no opportunity to rule on whether the State's questioning amounted to prosecutorial misconduct.

[¶9]   When prosecutorial misconduct is raised for the first time on appeal, we may review for obvious error. *Samaniego*, 2022 ND 38, at ¶ 16.

> Our review is limited to determining if the prosecutor's conduct prejudicially affected the defendant's substantial rights, so as to deprive the defendant of a fair trial. In deciding if there was obvious error, we consider the probable effect of the prosecutor's improper comments on the jury's ability to judge the evidence fairly. Obvious error is noticed only in exceptional

---

[1] Smith argues this bench conference violated his right to a public trial.

circumstances in which the defendant has suffered a serious injustice.

*Vondal*, 2011 ND 186, ¶ 12 (cleaned up).

[¶10] In *State v. Schimmel*, this Court expressed our concerns regarding prosecutors providing their own personal beliefs on the evidence:

> When the state's attorney comments personally on the evidence, he is acting as an unsworn witness for the prosecution who is not subject to cross-examination and who may be perceived as an expert witness testifying about scientific evidence. Additionally, we are concerned that personal comments made by the state's attorney may convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant. Our final concern is that the prosecutor's opinion carries with it the "imprimatur of the Government." Improper argument by the state's attorney may induce the jury to trust the government's view rather than its own judgment of the evidence when deliberating. Correspondingly, the prosecution's improper suggestions, insinuations and assertions of personal knowledge distort the fundamental guarantee of a fair trial by placing the great weight and presence of the government on the side of the prosecutor, who is not the representative of an ordinary party but of the sovereignty, whose obligation is not only to govern but to govern impartially. The sovereign's interest in a criminal prosecution is not to win at all costs but to see that justice is done.

409 N.W.2d 335, 343 (N.D. 1987) (citations omitted). Accordingly, prosecutors should not express their personal views on the evidence to the jury. A prosecutor must walk a line between his or her duty to prosecute earnestly while refraining from improper methods calculated to produce a wrongful conviction. *Id.* at 342. This can be a gray area and a difficult assessment to make. *Id.* The trial court must discourage inappropriate argument by the prosecutor by taking prompt action, which may include corrective instructions or an admonition. *Id.*

[¶11] Part of determining whether the State's questioning was improper requires looking at whether the questions were invited. A defendant cannot claim error for arguments that are invited. *State v. Kruckenberg*, 2008 ND 212, ¶ 28, 758 N.W.2d 427. When determining whether a prosecutor's invited response prejudices the defendant, the defense counsel's arguments must be considered, and if the remarks did no more than right the scale, those comments do not warrant reversal. *Id.*

[¶12] A review of the record shows Smith asserted self-defense immediately. During opening statements, the defense stated, "This isn't a question of where or what happened; it is a question of whether Travis Smith legally and validly exercised his right to self-defense. . . ." During the State's case-in-chief, the defense cross-examined Booker and asked whether he thought Smith acted in self-defense. Smith opened the door to the State's questions regarding self-defense. The State's questions here were advanced to glean evidence, or obtain a concession, on whether discarding the knife was important to Smith's claim of self-defense. Whether Smith acted in self-defense was an issue of fact in contention with regard to the aggravated assault charge. *See State v. Pasha*, 2008 WL 268863 (N.J. 2008) (admitting a statement from a defendant after law enforcement asked the defendant to help prove his innocence was not improper; rather, it was necessary phrasing employed to attempt to glean relevant information). The State's questioning does not warrant reversal because it was invited and in response to similar questions by the defense. The State's questions regarding Smith's claim of self-defense standing alone were not improper, but they were perilously close to the line. However, even if the questioning by the State was improper, as noted below, Smith has not shown he was prejudiced.

B.

[¶13] Smith argues the prejudice that resulted from the alleged improper statements was burden shifting. Although we concluded Smith did not properly preserve the issue of prosecutorial misconduct on appeal, we will address the burden shifting argument because his objection at trial was that he did not have to "prove his innocence."

7

[¶14] Under North Dakota law, the State must prove beyond a reasonable doubt each element of a charged offense. *State v. Olander*, 1998 ND 50, ¶ 20, 575 N.W.2d 658. The element of an offense means the "nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue." *Id.* (quoting N.D.C.C. § 12.1-01-03(1)(e)). Smith argues the statement amounted to burden shifting because twice the prosecutor "tells the jury Mr. Smith has to show, or prove he acted in self-defense when the burden is on the State to prove that he did not act in self-defense." "Comments intended to highlight the weaknesses of a defendant's case do not shift the burden of proof." *United States v. Bentley*, 561 F.3d 803, 810 (8th Cir. 2009). Additionally, a prosecutor's comment on the lack of evidence supporting a defense theory does not improperly shift the burden. *State v. McDaniel*, 777 N.W.2d 739, 750 (Minn. 2010).

[¶15] Here, counsel's objection to the State's question was sustained as to the form of the question. The district court, taking prompt action, ordered the initial question stricken. The prosecutor rephrased his question. Counsel objected, noting the question now calls for speculation and a legal conclusion. A sidebar occurred, and the objection was sustained. No further instruction was given at that time. The jury instructions provided an explanation that stricken questions must be disregarded. The jury instructions also provided that "sustained" means the question must not be answered.

[¶16] The jury instructions further provided:

> An attorney is an officer of the Court. It is an attorney's duty to interview witnesses in advance of the trial and present evidence on behalf of a client, to make proper objections, and to argue fully a client's cause. However, the argument or other remarks of an attorney, except admissions and stipulations noted in the course of the trial, must not be considered by you as evidence. If counsel or I have made any comments or statements concerning the evidence which you find are not supported by the evidence, you should disregard them and rely on your own recollection or observation. If counsel have made any statements as to the law which are not supported by these instructions, you should disregard those statements.

8

[¶17] The jury instructions specifically included an instruction on the element of self-defense:

> Evidence has been presented that Defendant acted in self-defense. The State must prove beyond a reasonable doubt as an additional element of that offense charged that the Defendant was not acting in self-defense. The Defendant does not have the burden of proof as to this defense. If the State has failed to prove beyond a reasonable doubt that the Defendant did not act in self-defense, the Defendant is entitled to a verdict of not guilty.

We have previously held this self-defense instruction given by the court correctly provides that the burden of proof is on the State to prove beyond a reasonable doubt that the defendant was not acting in self-defense. *State v. Bauer*, 2010 ND 109, ¶ 12, 783 N.W.2d 21; *State v. Olander,* 1998 ND 50, ¶ 22, 575 N.W.2d 658 ("[I]f there is enough evidence of self-defense for an instruction on it, an accused is entitled to an instruction to the jury that the State must prove beyond a reasonable doubt the accused did not act in self-defense as an element of the offense."). The jury instruction outlining each and every element the State must prove beyond a reasonable doubt, included the element: "The defendant did not act in self-defense."

[¶18] These jury instructions were provided at the opening and closing of the trial. Moreover, the burden of proof was discussed during opening statements and closing arguments. The jury heard numerous times that the burden of proof, including proof beyond a reasonable doubt that the defendant did not act in self-defense, remained with the State. We presume the jury followed the trial court's admonition and disregarded improper statements. *State v. Pena Garcia*, 2012 ND 11, ¶ 10, 812 N.W.2d 328; *see also State v. Patterson,* 2014 ND 193, ¶ 15, 855 N.W.2d 113 ("[W]e presume the jury followed the court's instructions."). Any potential prejudice from the prosecutor's questioning was minimized by the jury instructions. We have reviewed the transcript of Smith's trial and are unable to conclude the State's questions resulted in burden shifting.

## III

[¶19] Smith argues his right to a public trial was violated because the court held various unrecorded bench conferences, or sidebars, regarding trial matters, including: (1) an off-the-record discussion during voir dire at the bench with counsel discussing when to take a lunch break; (2) an off-the-record scheduling conference at the bench with counsel; (3) an off-the-record discussion at the bench with counsel discussing sending the jury out for a fifteen-minute break; (4) an off-the-record discussion at the bench with counsel towards the end of the day, deciding to adjourn for the day; (5) the court reconvening on the record shortly after announcing it was on a fifteen-minute break; and, (6) an off-the-record discussion at the bench with counsel discussing an objection made to a question by the State as identified above.

[¶20] The de novo standard of review applies to whether facts rise to the level of a public trial violation. *State v. Martinez*, 2021 ND 42, ¶ 19, 956 N.W.2d 772. "When considering on appeal a defendant's claim that his right to a public trial was violated, we first consider whether the claim of error was preserved at trial. We then consider the threshold question of whether there was a closure implicating the public trial right." *Id.* at ¶ 3. If we decide there was a closure, "we determine whether the trial court made pre-closure *Waller* findings sufficient to justify the closure." *Id.* The appellant has the burden to demonstrate the public was excluded from a proceeding to which the public had a right to be present. *State v. Frederick*, 2023 ND 77, ¶ 7, --- N.W.2d ---. A defendant's right to a public trial is a structural error that affects the substantial rights of the defendant and constitutes obvious error. *Id.* at ¶ 5.

[¶21] Smith did not preserve the public trial issue by timely objecting at trial. Therefore, we review only for obvious error. *State v. Morales*, 2019 ND 206, ¶ 24, 932 N.W.2d 106. "To establish obvious error, the defendant must demonstrate (1) an error, (2) that was plain, and (3) affected his substantial rights." *Id.* If obvious error is established by the defendant, this Court has discretion to correct the error "and should correct it if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Olander*, 1998 ND 50, ¶ 16).

[¶22] "We have said that brief sidebars or bench conferences conducted during trial to address routine evidentiary or administrative issues outside the hearing of the jury ordinarily will not implicate the public trial right." *Martinez*, 2021 ND 42, ¶ 20. For example, routine evidentiary rulings, objection rulings, or "[m]atters traditionally addressed during private bench conferences or conferences in chambers generally are not closures implicating the Sixth Amendment." *Id*.; *see also Morales,* 2019 ND 206, ¶ 19 (concluding a bench conference concerning an evidentiary objection seeking to exclude evidence during trial is not a closure implicating a public trial right). There is no right of public or press access to bench conferences. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23 (1980) ("The presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interests of decorum. Cf. *Illinois v. Allen*, 397 U.S. 337 (1970). Thus, when engaging in interchanges at the bench, the trial judge is not required to allow public or press intrusion upon the huddle. Nor does this opinion intimate that judges are restricted in their ability to conduct conferences in chambers, inasmuch as such conferences are distinct from trial proceedings.").

[¶23] In addition, proceedings that do not implicate the right to a public trial are not necessarily limited to purely administrative procedures such as scheduling. *State v. Pendleton*, 2022 ND 149, ¶ 6, 978 N.W.2d 641. Non-public exchanges between counsel and the court on technical legal issues and routine administrative problems do not hinder the objectives which the United States Supreme Court in *Waller* observed were fostered by public trials. *Id*. In *Pendleton,* the district court requested the parties meet "in chambers and off the record" to discuss how the parties wanted to exercise their peremptory challenges. *Id*. at ¶ 9. We stated this type of discussion was administrative and concluded the challenged conference, even though it was off the record, did not implicate the potential abuses a public trial is designed to protect against. *Id*.

[¶24] Here, all of the bench conferences or sidebars were unrecorded. The first sidebar took place during voir dire:

THE COURT: If counsel for both parties could approach, please?

11

(Counsel approached the bench, and the following occurred: )

(Counsel returned to the trial tables, and the following occurred in open court: )

THE COURT: Thank you, Counsel. Ms. Brainard, you may continue.

MS. BRAINARD: The judge is worried about your lunch break, folks. Rightly so, right?

Ms. Brainard's comment indicates the sidebar was to discuss a scheduling matter — when the prospective jurors would be dismissed for a lunch break.

[¶25] The next sidebar happened on the first day of evidence during the defense's cross-examination of a witness. Immediately after this sidebar, the court announced an afternoon recess and released the jury for fifteen minutes, showing that this sidebar was also addressing a scheduling matter — giving the jury a break.

[¶26] The next sidebar was requested by the defense to address scheduling:

MS. BRAINARD: Your Honor, can we approach for just a quick scheduling conference?

THE COURT: Counsel for the parties may approach.

(Counsel approached the bench for an off-the-record sidebar.)

[¶27] The next sidebar again appeared to address scheduling matters because the court sent the jury home immediately following the sidebar:

THE COURT: . . . Next question, Ms. Brainard.

MS. BRAINARD: Your Honor, I think for the most part, the rest that I want to go through is just snippets of the video again. And I don't know if you want to start in on that today or how you want to do that. Like I said, I think it'll take approximately 20 to 30 minutes. And Mr. Younggren and I have to set up how we're going to do that besides —

THE COURT:     Okay.

MS. BRAINARD: —because we're going to play it off his video.

THE COURT:     If counsel for both parties could approach, please.

(Counsel approached the bench for an off-the-record sidebar.)

THE COURT:     Thank you, Counsel.

All right, folks, it's 4:42 in the afternoon. Going to send you home for the evening.

[¶28] The next alleged closure occurred when the court reconvened outside the presence of the jury after announcing a fifteen-minute break. This conference between the judge and both attorneys was recorded. Smith argues announcing a recess and reconvening prior to the publicly announced time thwarts the ability of the public to attend the trial and requires reversal. Smith provides no legal authority to support this contention and no factual support that anyone from the public was excluded. *See State v. Obrigewitch*, 356 N.W.2d 105, 109 (N.D. 1984) (where a party fails to provide supporting argument for an issue listed in his brief, he is deemed to have waived that issue).

[¶29] The last sidebar Smith takes issue with involved an objection to a question by the State. Smith's counsel made the objection, the sidebar at the bench occurred, and then the objection was sustained on the record.

[¶30] Smith acknowledges the bench conferences or sidebars were held in view of the public. He has not shown the bench conferences addressed anything other than scheduling, administrative matters, or routine evidentiary rulings. A district court failing to make an adequate record is not the same as closing a proceeding to the public. *Frederick*, 2023 ND 77, ¶ 10. While our district courts should be mindful that the use of off-the-record discussions are disapproved of, *State v. Schlittenhardt*, 147 N.W.2d 118, 125 (N.D. 1966), the challenged conferences here were not closures implicating the public trial right. Smith has not met his burden to show obvious error that the court's procedure, while imperfect, violated his right to a public trial.

13

# IV

[¶31] Smith next argues the district court erred by admitting expert testimony that was cumulative evidence in violation of Rule 403 of the North Dakota Rules of Evidence, and improperly noticed expert evidence in violation of North Dakota Rules of Criminal Procedure 16(a)(1)(F).

[¶32] The district court's evidentiary rulings are reviewed under an abuse of discretion standard. *State v. Poulor*, 2019 ND 215, ¶ 14, 932 N.W.2d 534. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law. *Id*. Further, "[a] district court has broad discretion in deciding whether proffered evidence is relevant, and we will not reverse the district court's decision to admit or exclude evidence unless it abused its discretion." *State v. Thompson*, 2010 ND 10, ¶ 10, 777 N.W.2d 617. All relevant evidence is generally admissible, but "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by . . . needlessly presenting cumulative evidence." N.D.R.Ev. 402, 403. To exclude evidence on the basis of it being cumulative, the concern over the "needless presentation of cumulative evidence" must substantially outweigh the probative value of the evidence. *State v. Randall*, 2002 ND 16, ¶ 19, 639 N.W.2d 439.

> Upon a defendant's written request, the prosecution must give to the defendant a written summary of any testimony that the prosecution intends to use under N.D.R.Ev. 702, 703, or 705 during its case-in-chief at trial. If the prosecution requests discovery under Rule 16(b)(1)(C)(ii) and the defendant complies, the prosecution must, upon the defendant's written request, give to the defendant a written summary of testimony that the government intends to use under N.D.R.Ev. 702, 703, or 705 as evidence at trial on the issue of the defendant's mental condition. Expert witness summaries must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

N.D.R.Crim.P. 16(a)(1)(F).

[¶33] Here, the State filed notice of an expert witness on January 11, 2022, which was three months before trial. The notice included Dr. Gebur's curriculum vitae and provided his field of general surgery, qualifying him to opine "regarding the severity and cause of the multiple stab wounds suffered by the victim and inflicted by the Defendant." Medical records previously disclosed "describe his observations, medical interventions and opinions." The district court concluded this notice, filed three months before trial, complies with N.D.R.Crim.P. 16(a)(1)(F). We agree. We hold the State properly noticed Dr. Gebur as an expert witness under N.D.R.Crim.P. 16(a)(1)(F). The district court did not abuse its discretion by admitting properly noticed expert testimony.

[¶34] Additionally, the district court found that the expert testimony was relevant and not overly cumulative. The court found Dr. Gebur's testimony was necessary to the trial for purposes of the severity of the victim's injury, which is relevant because serious bodily injury is an element of aggravated assault and would be helpful to the jury. The court specifically noted it was balancing Rules of Evidence 401, 402 and 403. These findings show the court properly balanced the evidence under N.D.R.Evid. 403. Therefore, the court did not abuse its discretion by allowing Dr. Gebur's expert testimony because it was relevant and not overly cumulative.

V

[¶35] The criminal judgment is affirmed.

[¶36] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr