# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2023 ND 227

State of North Dakota,                                           Plaintiff and Appellee

    v.

Demetris Haney,                                             Defendant and Appellant

### Nos. 20220366-20220367

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Amanda R. Engelstad, State's Attorney, Dickinson, ND, for plaintiff and appellee; submitted on brief.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Demetris Haney appeals from a criminal judgment entered after a jury found him guilty of aggravated assault, reckless endangerment, and terrorizing. We conclude the district court did not err in denying his motion for judgment of acquittal and did not deny his right to a public trial. We affirm.

I

[¶2]   On January 1, 2022, Haney and three other individuals were involved in a shooting in a bar's parking lot in Dickinson. The State charged Haney with reckless endangerment and terrorizing, in addition to conspiracy to commit murder and two counts of attempted murder. The State subsequently moved to dismiss the conspiracy charge, which the district court granted. In August 2022, the court held a three-day jury trial on the remaining four counts.

[¶3]   Haney and his wife went to the bar on New Year's Eve. While at the bar, two acquaintances of Haney—Jamaal Brown and Alexander Aseph—entered the bar and became upset with another individual. Brown and Aseph were seen tucking guns into their waistbands before entering the bar, getting into a disagreement in the bar, and brandishing their guns. Brown and Aseph left the bar through the main exit. Haney testified he told his wife they were leaving and left from a different exit into the parking lot.

[¶4]   At trial, the State offered photographs and surveillance videos into evidence and played videos for the jury, which included the shooting in the parking lot. The investigating detective testified regarding the photographs and videos, stating Haney raised his firearm towards Brown before Aseph and Brown raised any weapons:

> So prior to Brown getting in his vehicle, [Haney] fires multiple rounds at Brown. Brown drops rapidly. And then Aseph and Brown, I believe they returned fire towards [Haney]. They eventually entered the Jeep and then the Jeep attempts to leave. The other individual that we saw, [Dontaye] Mayfield, he goes

inside his white Chevy truck right there, and he retrieves a firearm. And then as the Jeep is leaving, you can see Mayfield and [Haney] running towards the Jeep and firing at the Jeep as it leaves the area.

The detective testified, in his opinion, Haney was the first person to shoot. The detective testified officers collected twenty-five shell casings from the scene, with an additional four casings later found on the Jeep used by Aseph and Brown. Haney testified when he went out to his car, Brown and Aseph began shooting at him and he returned fire with a gun he grabbed out of his car, shooting five rounds towards Brown. Haney further testified he fired until his gun was empty and did not shoot at the Jeep as it left the parking lot.

[¶5] After the State rested its case, Haney moved the district court under N.D.R.Crim.P. 29 for a judgment of acquittal on all four counts. The court denied his motion. The jury found Haney not guilty of the attempted murder counts, but found him guilty of two counts of the lesser-included offense of aggravated assault and guilty of reckless endangerment and terrorizing. The jury also found Haney was a dangerous special offender. In December 2022, the court sentenced Haney, and the clerk entered a criminal judgment.

II

[¶6] Haney argues the district court erred in denying his motion for a judgment of acquittal under N.D.R.Crim.P. 29 on the terrorizing charge.

[¶7] "To grant a motion for judgment of acquittal under N.D.R.Crim.P. 29, a trial court must find the evidence is insufficient to sustain a conviction of the offenses charged." *State v. Yoney*, 2020 ND 118, ¶ 19, 943 N.W.2d 791 (quoting *State v. Norton*, 2019 ND 191, ¶ 14, 930 N.W.2d 635). "To successfully challenge the sufficiency of the evidence on appeal, the defendant must show the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt." *State v. Bear*, 2015 ND 36, ¶ 7, 859 N.W.2d 595 (quoting *State v. Herzig*, 2012 ND 247, ¶ 12, 825 N.W.2d 235). We will assume the jury believed all evidence supporting a guilty verdict and disbelieved any contrary evidence. *Yoney*, at ¶ 19. We do not reweigh conflicting evidence or

judge the witnesses' credibility. *State v. Noble*, 2023 ND 119, ¶ 4, 992 N.W.2d 518.

[¶8] Circumstantial evidence alone may justify a conviction when "the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *State v. Fleck*, 2022 ND 49, ¶ 9, 971 N.W.2d 387 (quoting *State v. Spillum*, 2021 ND 25, ¶ 6, 954 N.W.2d 673). "A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts." *Id.* (quoting *Spillum*, at ¶ 6).

[¶9] Section 12.1-17-04(1), N.D.C.C., defines the crime of terrorizing and provides, in relevant part:

> A person is guilty of a class C felony if, with intent to place another human being in fear for that human being's or another's safety . . . or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person . . . [t]hreatens to commit any crime of violence or act dangerous to human life[.]

[¶10] To convict under this section, the State must prove: "(1) the defendant intended to cause another person to fear for his or another person's safety or acted with reckless disregard of the risk of causing such fear, and (2) the defendant made a threat to commit a 'crime of violence or act dangerous to human life.'" *State v. Johnson*, 2021 ND 161, ¶ 6, 964 N.W.2d 500 (quoting *State v. Brossart*, 2015 ND 1, ¶ 19, 858 N.W.2d 275). "A threat could be in words, verbal or written; actions; gestures; suggestive innuendo; or any other form of communication." *Yoney*, 2020 ND 118, ¶ 20 (quoting *State v. Laib*, 2005 ND 191, ¶ 10, 705 N.W.2d 815).

[¶11] In this case, the district court instructed the jury on the essential elements for terrorizing, as follows:

> Count 2: Terrorizing
> A person who, with intent to place another in fear for that person's or another's safety or in reckless disregard of the risk of causing such terror, threatens to commit any crime of violence or act dangerous to human life is guilty of Terrorizing.
> ESSENTIAL ELEMENTS OF OFFENSE

3

The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:

1) On or about January 1, 2022, in Stark County, North Dakota,

2) The Defendant, Demetris Haney,;

3) With intent to place another in fear for that person's or another's safety or in reckless disregard of the risk of causing such terror;

4) Threatened to commit any crime of violence or act dangerous to human life; and

5) The Defendant did not act in self-defense.

The jury instructions defined the words "[t]hreat or [t]hreatened" as "a communication, verbal or nonverbal, where the actor means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals; the threat must be considered from the perspective of a reasonable person in the recipient's position."

[¶12] In moving for a judgment of acquittal on the terrorizing count, Haney argued the evidence was "totally lacking" he made any "concrete threats" toward Brown, Aseph, or "anyone else in particular." In denying his motion, the district court explained, "While there might be no specific threats, I mean there was a whole bunch of bullets flying. Some of them were flying from Mr. Haney's gun."

[¶13] Haney argues the State failed to prove the terrorizing charge because he did not "threaten" to commit any violent crime or a dangerous act. He asserts no evidence shows he made a threatening statement or brandished his gun or another weapon and no evidence shows he had the specific intent to place anyone in fear for their safety. The State responds the agreed-upon jury instructions provide the "threat" did not have to be a verbal threat and firing his gun five times at another individual or individuals is a "threat" defined by the jury instructions.

[¶14] "A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving

4

the prosecution the benefit of all inferences reasonably to be drawn in its favor." *Bear*, 2015 ND 36, ¶ 14 (quoting *State v. Knowels*, 2003 ND 180, ¶ 6, 671 N.W.2d 816). "A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty." *State v. Dahl*, 2022 ND 212, ¶ 5, 982 N.W.2d 580 (quoting *State v. Nakvinda*, 2011 ND 217, ¶ 12, 807 N.W.2d 204).

[¶15] Here, in convicting Haney, the jury found Haney had not acted in self-defense. There is evidence in the record showing Haney raised his gun and fired multiple times at one or more individuals. From the perspective of a reasonable person, someone raising his gun towards an individual and firing multiple times at the individual could constitute a nonverbal threat to those present at the scene. Moreover, the jury could construe the evidence of Haney's conduct in exchanging gunfire with Brown and Aseph as establishing Haney's intent to place another in fear for that person's safety or, at least, acting in reckless disregard of the risk of causing such terror.

[¶16] Based on the evidence presented at trial, we conclude a rational fact finder could find Haney both "[t]hreatened to commit any crime of violence or act dangerous to human life" and had the "intent to place another in fear for [their] safety or in reckless disregard of the risk of causing such terror[.]" Haney has not shown there was no reasonable inference of guilt. Viewing the evidence in a light most favorable to the verdict, sufficient evidence supports the conviction.

### III

[¶17] Haney argues the district court created a structural error by denying his constitutional rights to a public trial.

[¶18] "The structural error doctrine applies to a narrow class of rights, including three Sixth Amendment rights defining the framework of a trial: the right to counsel, the right to self-represent, and the right to a public trial." *State v. Linner*, 2023 ND 57, ¶ 6, 988 N.W.2d 586 (quoting *State v. Martinez*, 2021 ND 42, ¶ 4, 956 N.W.2d 772). "A structural error affects the framework within which a trial proceeds and therefore 'renders the trial fundamentally

5

unfair or an unreliable vehicle for determining guilt or innocence.'" *Id.* (quoting *Martinez*, at ¶ 4). We apply a de novo standard in reviewing whether facts rise to the level of a public trial violation. *Id.*

[¶19] In considering a defendant's claim his right to a public trial was violated, "we first consider whether the claim of error was preserved at trial. We then consider the threshold question of whether there was a closure implicating the public trial right." *Linner*, 2023 ND 57, ¶ 7 (quoting *Martinez*, 2021 ND 42, ¶ 3). If there was a closure, we decide "whether the trial court made pre-closure *Waller* findings sufficient to justify the closure." *Id.* When a defendant does not preserve the public trial issue with a timely objection at the trial, we review only for obvious error. *Id.* To establish obvious error, the defendant must demonstrate a plain error that affected the defendant's substantial rights. *State v. Pemberton*, 2019 ND 157, ¶ 8, 930 N.W.2d 125; *see also* N.D.R.Crim.P. 52(b); *State v. Frederick*, 2023 ND 77, ¶ 4, 989 N.W.2d 504.

[¶20] In *State v. Kollie*, 2023 ND 152, ¶¶ 5-6, we further explained our public-trial jurisprudence:

> "We have said that brief sidebars or bench conferences conducted during trial to address routine evidentiary or administrative issues outside the hearing of the jury ordinarily will not implicate the public trial right." [*State v. Pendleton*, 2022 ND 149, ¶ 6, 978 N.W.2d 641.] "For example, routine evidentiary rulings, objection rulings, or '[m]atters traditionally addressed during private bench conferences or conferences in chambers generally are not closures implicating the Sixth Amendment.'" *Id.* (quoting *State v. Martinez*, 2021 ND 42, ¶ 20, 956 N.W.2d 772). We have also said, "Where a bench conference is held in view of both the public and the jury, despite their inability to hear what is said, the public trial right is satisfied by prompt availability of a record of those proceedings." *State v. Morales*, 2019 ND 206, ¶ 17, 932 N.W.2d 106.
>
> In *State v. Frederick*, we clarified our public trial jurisprudence. 2023 ND 77, 989 N.W.2d 504. The appellant bears the burden to demonstrate the public was excluded from a proceeding to which the public had a right to be present. *Id.* at ¶ 7. "An inadequate record is not equivalent to a closed trial." *Id.* at ¶ 10. "While a district court's failing to preserve a record of

6

testimony and proceedings may be error, it is not structural error." *Id.* at ¶ 11. Accordingly, a sidebar addressing routine evidentiary or administrative matters during trial, even without an adequate record, is not a closure implicating the public trial right. *Id.* at ¶¶ 10, 20-21.

[¶21] On appeal, Haney identifies three times throughout the trial when the district court held in-chamber conferences without making pre-closure *Waller* findings or obtaining a waiver from Haney. He also identifies four sidebars or bench conferences held without being recorded and without Haney present. Haney did not object at trial to any of these in-chamber conferences or sidebars.

[¶22] Haney argues the district court violated his right to a public trial by conducting the in-chamber conferences without making *Waller* findings, and that the alleged violation constitutes obvious error. He contends under *State v. Pulkrabek*, 2022 ND 128, ¶ 14, 975 N.W.2d 572, the in-chamber conferences created a structural error requiring reversal of his convictions. The State responds the three in-chamber conferences are similar to the in-chamber conferences in *Pendleton*, 2022 ND 149, ¶¶ 7-10, and were routine evidentiary, administrative, and housekeeping matters.

[¶23] The district court's three in-chamber conferences were held on the record with counsel and Haney present, and a transcript was produced. We have said, "Non-public exchanges between counsel and the court on technical legal issues and routine administrative problems do not hinder the objectives which the United States Supreme Court in *Waller* observed were fostered by public trials." *State v. Smith*, 2023 ND 82, ¶ 23, 989 N.W.2d 490; *see also Pendleton*, 2022 ND 149, ¶ 9. On our review, we agree these conferences involved routine evidentiary and administrative matters. During the first in-chamber conference, the district court and counsel discussed absent potential jurors and the likely number of potential jurors needed to fill the jury. During the second in-chamber conference, they discussed confusion regarding the marking of exhibits on the notice of exhibits. During the third in-chamber conference, the parties argued and the judge ruled on an evidentiary objection and addressed when to take and the length of the next break. We conclude these in-chamber

conferences held on the record were not closures implicating Haney's public trial right.

[¶24] While judges are not necessarily "restricted in their ability to conduct conferences in chambers, inasmuch as such conferences are *distinct from trial proceedings*," *Smith*, 2023 ND 82, ¶ 22 (emphasis added) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23 (1980) (Brennan, J., concurring in judgment)), we nevertheless caution against using in-chamber conferences during public trial proceedings, particularly when such conferences may inevitably veer into matters that implicate public trial rights. The better practice is to avoid in-chamber conferences during trial altogether, opting instead for proceedings in open court without the jury present or for sidebars or bench conferences held on the record.

[¶25] Here, as in *Kollie*, "[t]he district court erred by failing to either adequately record the sidebars or summarize the sidebars on the record and then allowing the parties the opportunity to confirm or correct the court's summary." 2023 ND 152, ¶ 13 (citing *Frederick*, 2023 ND 77, ¶ 21). We further conclude, however, Haney failed to establish obvious error in the district court's failure to create a record of the identified sidebars or bench conferences. In *Frederick*, at ¶ 13, we said to show that "an inadequate record affects a defendant's substantial rights, the defendant must demonstrate the record cannot be adequately supplemented or reconstructed." We explained N.D.R.App.P. 10(f) provides a mechanism for an appellant to reconstruct the record and "[w]ithout such an attempted reconstruction, this Court is unable to accurately complete an appellate review." *Id.* at ¶ 15.

[¶26] Haney did not object during trial to the district court's failure to preserve or summarize the substance of the sidebars or bench conferences on the record. Haney made no effort to supplement or reconstruct the record under N.D.R.App.P. 10 to demonstrate prejudice. He also has not shown the record could not be adequately supplemented or reconstructed. Moreover, Haney has not "demonstrated how the error affected his substantial rights, nor has he shown the bench conference addressed any matters implicating his right to a

8

public trial as distinguished from routine evidentiary or administrative issues." *Frederick*, 2023 ND 77, ¶ 21.

[¶27] On this record, we conclude the in-chamber conferences were not closures implicating Haney's public trial right and Haney has not established obvious error in the district court's failure to create a record of the sidebars or bench conferences.

IV

[¶28] Haney argues the district court denied his right to due process. However, Haney provides no factual or legal analysis to support that argument. Rather, Haney appears to argue this Court's precedent in *Frederick* violates due process by improperly shifting the burden to criminal appellants to supplement the record for unrecorded sidebars.

[¶29] "The first step in raising a constitutional claim is articulation of the specific constitutional provisions violated." *Fenske v. Fenske*, 542 N.W.2d 98, 100 (N.D. 1996). "Persuasive authority and reasoning must support constitutional claims." *Id.* Haney did not provide relevant authority or meaningful reasoning to support his due process claim.

[¶30] Haney first argues our decision in *Frederick* is "in contradiction to" N.D. Sup. Ct. Admin. R. 9, Jury Standard 7(d). Standard 7(d) simply provides that "[i]n felony criminal cases, the voir dire process must be held on the record." Standard 7(d) has no application to Haney's case; Haney does not argue jury selection was not recorded or was not held before the public.

[¶31] Next, Haney cites the due process clauses of the federal and North Dakota constitutions for the principle "[p]rocedural due process requires fundamental fairness." He then argues his right to appeal his criminal conviction is "erase[d]" because, without a transcript, this Court cannot conduct a meaningful review of the trial. Haney cites *State v. Hapip*, 174 N.W.2d 717 (N.D. 1970), and *State v. Spiekermeier*, 256 N.W.2d 877 (N.D. 1977), in support of his argument. However, *Hapip* involved application of a then existing statute. This Court held under the prior law that a party "in a

9

county court of increased jurisdiction ha[d] a *statutory right* to have the proceedings upon the trial taken down by a reporter and to have a transcript of the proceedings certified as provided by statute," and that the defendant had not waived his right to have the trial proceedings "taken down by a court reporter." 174 N.W.2d at 719 (emphasis added). Similarly, in *Spiekermeier*, this Court held a new restitution hearing was required because "no record of the proceedings" had been made. 256 N.W.2d at 878. This Court explained, "Since the record contains no statement of the evidence or proceedings, we must conclude that none was prepared and submitted to the trial court for settlement and approval as permitted by [then] Rule 10(c), NDRAppP, or prepared and signed by the parties and approved by the trial court as permitted by [then] Rule 10(d), NDRAppP." *Id.* Neither *Hapip* nor *Spiekermeier* involved the resolution of asserted constitutional due process violations. Moreover, with very limited exceptions, a record of Haney's trial was made.

[¶32] Finally, Haney contends our holding in *Frederick* requires his trial counsel to become a fact witness in violation of N.D.R. Prof. Conduct 3.7(a)(1), providing "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . [t]he testimony relates to an uncontested issue[,]" and potentially creates a violation of N.D.R. Prof. Conduct 1.7, which prohibits conflicts of interest. Haney's argument of potential professional conduct violations is merely speculative and not at issue in this case since he was represented by different counsel at trial. Moreover, supplementing or reconstructing the record under N.D.R.App.P. 10(f)-(h) as to what occurred during the trial proceedings would not necessarily require trial counsel to become a fact witness in the underlying criminal case. Haney's arguments are unavailing.

[¶33] Rule 39, N.D. Sup. Ct. Admin. R., calls for preservation of the record, stating: "Except in small claims court cases under N.D.C.C. ch. 27-08.1 and in traffic cases under N.D.C.C. § 39-06.1-03, the record of testimony and proceedings of the district court must be preserved using audio-recording devices, video-recording devices, or stenographic shorthand notes." N.D. Sup.

Ct. Admin. R. 39(2). As discussed in *Frederick*, failing to preserve a record of sidebars or bench conferences does not constitute structural error:

> North Dakota law recognizes that not all proceedings will always be recorded. *Fenske v. Fenske*, 542 N.W.2d 98, 101 (N.D. 1996). Our law has also stated that while off the record discussions are "disapproved of," the trial record "will be searched and all parts of the record interpreted together. A deficiency in one place may be cured by what appears in another." *State v. Schlittenhardt*, 147 N.W.2d 118, 120, 125 (N.D. 1966) (citing *Davidson v. Nygaard*, 78 N.D. 141, 48 N.W.2d 578, 583 (1951)). While a district court's failing to preserve a record of testimony and proceedings may be error, it is not structural error.

2023 ND 77, ¶ 11. "To demonstrate that an inadequate record affects a defendant's substantial rights, the defendant must demonstrate the record cannot be adequately supplemented or reconstructed." *Id.* at ¶ 13. Haney failed to provide any authority or reasoned analysis supporting his argument requiring him to comply with N.D.R.App.P. 10(f)-(h) violates his constitutional right to due process.

[¶34] We have repeatedly declined to consider an issue or argument not adequately supported and briefed. *See State v. Nice*, 2019 ND 73, ¶ 11, 924 N.W.2d 102; *State v. Anderson*, 2016 ND 28, ¶ 24, 875 N.W.2d 496; *State v. Noack*, 2007 ND 82, ¶ 8, 732 N.W.2d 389; *State v. Haibeck*, 2006 ND 100, ¶ 9, 714 N.W.2d 52. "[A] party pursuing a constitutional claim must . . . make a strong case supported by both fact and law or forgo the claim." *State v. Gray*, 2017 ND 108, ¶ 14, 893 N.W.2d 484 (quoting *Weeks v. N.D. Workforce Safety & Ins. Fund*, 2011 ND 188, ¶ 8, 803 N.W.2d 601). Without authority and supporting reasoned analysis, "the mere assertion of unconstitutionality is insufficient to adequately raise a constitutional question." *Overboe v. Farm Credit Servs.*, 2001 ND 58, ¶ 13, 623 N.W.2d 372 (fleeting reference to "due process" in trial court and appellate briefs held insufficient to raise the constitutional validity of a statute under the due process clause).

[¶35] Although Haney challenges our recent decision in *Frederick* and this Court's procedure for supplementing or reconstructing the record under

N.D.R.App.P. 10 on the grounds of a purported due process violation, he has not cited any relevant case law in support of his argument holding this procedure is unconstitutional. Haney provides us with no detailed constitutional analysis or reasoning. Because Haney has not sufficiently challenged the constitutionality of N.D.R.App.P. 10 and our decision in *Frederick*, we decline to address the issue on the merits.

V

[¶36] We have considered Haney's remaining arguments and conclude they are either without merit or are not necessary to our decision. The criminal judgment is affirmed.

[¶37] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr