# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 218

State of North Dakota,                    Plaintiff and Appellee

v.

Grant Michael Grensteiner,              Defendant and Appellant

### Nos. 20240100 & 20240101

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Kirsten M. Sjue, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Nathan K. Madden, Assistant State's Attorney, Williston, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Grant Grensteiner appeals from two criminal judgments entered after a jury found him guilty of 17 counts of unlawful possession of a firearm by a felon and 18 counts of theft of property. We affirm, concluding the district court did not err in denying Grensteiner's motion to suppress evidence, there was sufficient evidence supporting his convictions, and there was no prosecutorial misconduct or improper burden shifting.

I

[¶2]   Following a traffic stop and the seizure of 17 stolen firearms and other stolen items, the State charged Grensteiner, the passenger of a Chevrolet Tahoe, with 17 counts of unlawful possession of a firearm by a felon and 18 counts of theft of property.[1] Grensteiner moved to suppress evidence discovered as a result of the stop and search, arguing the officers did not have reasonable suspicion of a traffic violation or probable cause to search the Nissan Armada, which was on a U-Haul trailer being towed by the Tahoe driven by Richard Sargent. After a hearing, the district court denied the motion, finding two traffic violations occurred when the vehicle stopped beyond two separate stop signs, violating N.D.C.C. § 39-10-24, and concluding these violations provided a lawful basis for the stop. The court further concluded that law enforcement had probable cause to search the towed Armada, determining the towing vehicle and towed vehicle were "one unit," and a drug detection dog "alerting" on the Tahoe extended to the towed Armada.

[¶3]   After denying the motion to suppress, the district court held a jury trial. Grensteiner moved for a judgment of acquittal following the State's case-in-chief, which was denied by the court. The jury found Grensteiner guilty on all counts.

---

[1] The driver of the Tahoe, Richard Sargent, was charged with, and convicted of, the same offenses. *State v. Sargent*, 2024 ND 121, ¶ 1, 8 N.W.3d 278.

[¶4] Grensteiner argues the district court erred in denying his motion to suppress. When reviewing a decision on a suppression motion,

> [w]e defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Casatelli*, 2021 ND 11, ¶ 8, 953 N.W.2d 656.

[¶5] Grensteiner argues law enforcement did not have reasonable suspicion to detain him because, as the passenger, he did not commit the traffic violations; an anonymous tip did not provide reasonable suspicion to detain him; there was no reasonable suspicion as to him to extend the stop to wait for the drug detection dog; and there was no probable cause to search the towed Armada. The State argues the first three issues concerning reasonable suspicion were not raised before the district court and therefore have not been preserved for appeal.

[¶6] In his brief in support of the suppression motion, Grensteiner argued the vehicle legally stopped at the stop signs and therefore there was no legal basis for the traffic stop, the anonymous tip did not provide probable cause to search the Armada, and the drug detection dog alert providing probable cause to search the Tahoe did not extend to the Armada. His arguments did not change at the suppression hearing. With respect to the anonymous tip issue, Grensteiner argued in the district court that the anonymous tip did not provide probable cause to search the Armada, but now argues on appeal that the anonymous tip did not provide reasonable suspicion to detain him. The other two issues now raised—illegal detainment as to him and extension of the stop—were not raised in the district court. Because these three issues were not raised before the district court, they have not been preserved for appeal. *State v. Black*, 2021 ND 103, ¶ 19,

960 N.W.2d 820; *State v. $44,140.00 U.S. Currency*, 2012 ND 176, ¶ 7, 820 N.W.2d 697. Further, Grensteiner does not challenge on appeal the court's finding that traffic violations were committed under N.D.C.C. § 39-10-24 or its conclusion that these violations provided a lawful basis for the stop.

[¶7] Grensteiner contends the probable cause to search the Tahoe provided by the dog alert did not extend to the Armada. We addressed this issue in *State v. Sargent*, 2024 ND 121, 8 N.W.3d 278. In *Sargent*, we noted that the defendant did not challenge whether there was probable cause based on the dog alert to search the Tahoe:

> One exception to the warrant requirement is the automobile exception. "Under the automobile exception, law enforcement may search for illegal contraband without a warrant when probable cause exists." *State v. Lark*, 2017 ND 251, ¶ 16, 902 N.W.2d 739. The district court found "there was clearly probable cause to search the [Tahoe], as the K-9 alert gave probable cause to search the [Tahoe.]" Sargent does not challenge this conclusion. Thus, the issue is whether the automobile exception extends to the Armada on the trailer towed by the Tahoe.

*Id.* at ¶ 25.

[¶8] Grensteiner, like Sargent, does not challenge the district court's conclusion that the dog alerting to the Tahoe provided probable cause to search the Tahoe. *See also State v. Lelm*, 2021 ND 118, ¶ 10, 962 N.W.2d 419 ("A drug-sniffing dog indicating the presence of a controlled substance in a vehicle establishes probable cause for officers to search that vehicle."). In *Sargent*, we specifically concluded that probable cause extended to the towed vehicle, stating "the officers had probable cause to search the Armada on the trailer towed by the Tahoe driven by Sargent." 2024 ND 121, ¶ 30; *see also id.* at ¶ 28 ("[U]nder the automobile exception, once probable cause to search is established, it extends 'bumper-to-bumper' to the entire travelling unit." (quoting *State v. Crudo*, 541 P.3d 67, 73 (Kan. 2024))). Grensteiner requests that the Court reconsider its conclusion in *Sargent*. We reject that request and follow *Sargent*, concluding the automobile exception applies because there was probable cause to search the Armada based on the dog alert.

3

## III

[¶9] Grensteiner argues there was insufficient evidence supporting his convictions. Our review of a challenge to the sufficiency of the evidence is well-established:

> When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses. . . . A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

*State v. Dahl*, 2022 ND 212, ¶ 5, 982 N.W.2d 580. Grensteiner contends there was insufficient evidence that he *possessed* the stolen firearms and other stolen items. He asserts there was no evidence that he knew what was in the Armada or that he had the ability to access what was in the Armada.

[¶10] Under N.D.C.C. § 62.1-02-01(1)(b) (2022),[2] a felon is prohibited from possessing or controlling a firearm within five years of his conviction. Under N.D.C.C. § 12.1-23-02(3), a person is guilty of theft if he "[k]nowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof." Grensteiner challenges only the possession element, and does not differentiate it from controlling, receiving, or retaining the stolen firearms and items. Addressing only the arguments raised, we turn to whether there was sufficient evidence that he possessed the stolen firearms and items.

---

[2] Section 62.1-02-01(1)(b), N.D.C.C., was amended effective August 1, 2023, after charges were originally brought in this case. The district court properly applied the 2022 statute in instructing the jury.

[¶11] Possession "may be actual or constructive, exclusive or joint and may be shown entirely by circumstantial evidence." *Dahl*, 2022 ND 212, ¶ 6. "To prove constructive possession the State must present evidence which establishes that the accused had the power and capability to exercise dominion and control over the contraband." *State v. Morris*, 331 N.W.2d 48, 53 (N.D. 1983). The State does not have to specifically prove "the accused had knowledge of the presence of the [contraband]." *Id.* at 54. "The evidence required to show an individual's power and capability to exercise control over a controlled substance need only establish his right or his ability to control, in a realistic and practical sense, the area where, or the container in which, the contraband is found." *Id.* Constructive possession may be inferred from the totality of circumstances, including "an accused's presence in the place where a controlled substance is found, his proximity to the place where it is found, and the fact that the controlled substance is found in plain view." *Id.* (citations omitted).

[¶12] At trial, the evidence showed that the 17 stolen firearms and a stolen pellet gun were found in the Armada, and other stolen items, including tools and a knife, were found in a tote in the back of the Tahoe. The U-Haul trailer that was used to tow the Armada was rented by Grensteiner for approximately a 24-hour period. The towing vehicle identified on the U-Haul agreement was a Tahoe. Grensteiner's employer testified he purchased the Armada in Dickinson and asked Grensteiner to pick the vehicle up for him, which was typical of Grensteiner's work duties.

[¶13] A jailhouse phone call recording was played for the jury. Detective Nicholas Satermo testified that he previously listened to the call, that he recognized Grensteiner's voice on the call, and that Grensteiner was talking to Sargent. Detective Satermo testified that he recalled hearing the statement that "the only evidence is the guns and shit," and Grensteiner stating that "doesn't look good as far as being in possession of all the shit" and "I don't see anybody knowing we were coming into town with this." Detective Satermo testified the use of "we," as opposed to "you," was significant in showing Grensteiner's knowledge of the stolen items.

5

[¶14] Grensteiner's employer purchased the Armada and specifically tasked Grensteiner with hauling it to him. Grensteiner therefore had authority from the vehicle's owner, his employer, to exercise dominion and control over the Armada. Grensteiner rented the U-Haul trailer used to tow the Armada. He was present in the same vehicle as the stolen tools and knife, and with the Armada in tow, was in relatively close proximity to the stolen firearms and pellet gun. While the firearms and pellet gun were not within reaching distance while the unit was being driven, it can be reasonably inferred that they would have been accessible while stopped. Further, a jury could reasonably infer Grensteiner knew the stolen firearms and items were in the vehicles based on his statements in the jailhouse call; but even if his jailhouse statements were, as his counsel argued at oral argument, merely his discussion of the evidence against him after the fact, the State does not have to affirmatively establish his knowledge of their presence in the vehicles. *See Morris*, 331 N.W.2d at 54. Rather, constructive possession may be inferred from the totality of the circumstances. *Id.* Under the totality of the circumstances, a jury could reasonably infer Grensteiner had the right or ability to control "the area where, or the container in which," the stolen firearms and items were found. *Id.* Viewing the evidence in the light most favorable to the verdict, we conclude substantial evidence exists that could allow a jury to draw a reasonable inference that Grensteiner constructively possessed the stolen firearms and other stolen items.

IV

[¶15] Grensteiner argues the State committed prosecutorial misconduct and improperly shifted the burden of proof to him during its questioning of Detective Satermo. At oral argument, Grensteiner argued the State also made improper comments during its closing argument at trial. Grensteiner did not raise this argument in his appellant brief. Therefore, we do not address the closing argument issue and limit our review to whether the questioning was improper. *State v. Wilder*, 2018 ND 93, ¶ 10, 909 N.W.2d 684 ("Although he alleged during oral argument that there were other improper comments at other times during the trial, we generally do not consider arguments raised for the first time at oral argument on appeal."); *State v. Hajicek*, 2020 ND 231, ¶ 16, 951 N.W.2d 203 ("[W]e will not consider issues not briefed on appeal.").

[¶16] Grensteiner admits he did not object to the State's questioning and the Court must review for obvious error. "[T]o establish obvious error, a defendant must show: (1) error; (2) that is plain; and (3) affects substantial rights." *State v. Kruckenberg*, 2008 ND 212, ¶ 27, 758 N.W.2d 427. "Even if the defendant meets his burden of establishing obvious error affecting substantial rights, the determination whether to correct the error lies within the discretion of the appellate court, and the court should exercise that discretion only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Linner*, 2023 ND 57, ¶ 16, 988 N.W.2d 586 (cleaned up).

[¶17] "When there is a claim of prosecutorial misconduct, we determine whether the prosecutor's actions were misconduct and, if they were, whether the misconduct had prejudicial effect." *State v. Pena Garcia*, 2012 ND 11, ¶ 6, 812 N.W.2d 328. "Although prosecutorial misconduct may create unfairness amounting to a due process violation, not every assertion of prosecutorial misconduct automatically rises to an error of constitutional dimension." *State v. Hannesson*, 2023 ND 80, ¶ 6, 989 N.W.2d 501 (quotation marks omitted).

> To determine whether a prosecutor's misconduct rises to a level of due process violation, we decide if the conduct, in the context of the entire trial, was sufficiently prejudicial to violate a defendant's due process rights. If conduct was sufficiently prejudicial, we then consider the probable effect the prosecutor's improper comment would have on the jury's ability to fairly judge the evidence. In reviewing claims involving improper prosecutorial comments, we have noted the following: Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.

*Id.* (quoting *State v. Bazile*, 2022 ND 59, ¶ 7, 971 N.W.2d 884).

[¶18] Grensteiner argues the following direct examination of Detective Satermo was improper:

> Q. Okay. All right. So, since opening this investigation last spring of 2022, are you aware of receiving any statements or documents from anyone that this Defendant had nothing to do with the crimes for which he was charged with?

7

A. No, I have not.

Q. Okay. Have you had investigations where folks do decide that they want to cooperate with law enforcement and come in and talk?

A. Yes.

Q. Okay. So that -- that would not be uncommon in your line of work and experience?

A. No.

. . . .

Q. And I did ask you this earlier, and I'm just going to run it past you one more time just so that we are abundantly clear. And to this date -- and keep in mind, charges were filed way back in April of last year, so we are well over a year and a half in?

A. Yes.

Q. Have you received any statements, any documents, any mitigation whatsoever from the person that he was involved with or any witness telling law enforcement this guy sitting to my left had absolutely nothing to do with this gun heist?

A. I did not.

Q. Nothing. And would you agree that 18 plus months would be plenty enough time to get some information over to law enforcement?

A. I would assume it is, yeah.

Grensteiner contends this line of questioning constituted prosecutorial misconduct and improperly shifted the burden of proof to him because "the prosecution is plainly requesting the jury consider that the defense did not produce evidence from some source, presumably [Sargent]." Grensteiner asserts this led the jury to conclude that either he should have testified or he had the burden to produce Sargent as a witness.

[¶19] "[I]t is a fundamental principle of constitutional law that a prosecutor may not comment on a defendant's failure to testify in a criminal case." *State v. Gibbs*, 2009 ND 44, ¶ 15, 763 N.W.2d 430. "This Court has recognized that a 'prosecutor does not comment on the defendant's failure to testify if the statement is made before the defendant has an opportunity to testify.'" *Id.* at ¶ 19 (quoting *State v. His Chase*, 531 N.W.2d 271, 273 (N.D. 1995)). The State's questioning of Detective Satermo did not contain a comment on Grensteiner's failure to testify. In fact, it

8

occurred in the State's case-in-case before Grensteiner even had an opportunity to testify.

[¶20] Further, the questioning of Detective Satermo did not imply Grensteiner had an obligation to call Sargent as a witness. Rather, the questioning showed that law enforcement did not receive exculpatory evidence from Sargent or any other witness which would exonerate Grensteiner. "Comments intended to highlight the weaknesses of a defendant's case do not shift the burden of proof." *State v. Smith*, 2023 ND 82, ¶ 14, 989 N.W.2d 490. Even if the questioning was improper, Grensteiner has failed to show the alleged misconduct had a prejudicial effect.

[¶21] In *Kruckenberg*, the State "argued in its rebuttal that the evidence pointed to no one else and that 'no evidence has been offered, none, that anyone other than the defendant sold the drugs.'" 2008 ND 212, ¶ 29. Although we were "concerned with a prosecutor commenting on the lack of evidence 'offered,' because such a phrase might be construed to suggest the defendant had a burden to offer evidence," we concluded the defendant was not prejudiced by the State's comment, but even "if error, did not rise to the level of obvious error." *Id.* at ¶¶ 30-31. We reasoned that there was overwhelming evidence of guilt in the record, a lack of evidence "indicat[ing] the jury concluded the burden shifted," and the jury instructions provided the State's burden of proof and noted that "counsels' arguments were not evidence." *Id.* at ¶ 30.

[¶22] In this case, the preliminary jury instructions stated that "the State has the burden of proof beyond a reasonable doubt," "the Defendant may, but is not required to, introduce evidence," "[b]efore the Defendant can be convicted on any charge, the State must prove all the essential elements of that offense beyond a reasonable doubt," "[t]he Defendant is presumed to be innocent unless the contrary, the Defendant's guilt, is proved beyond a reasonable doubt," and "[i]f the State has not proved the Defendant's guilt beyond a reasonable doubt, you must find the Defendant not guilty." The final jury instructions reiterated that "[i]f the State has failed to establish any of the essential elements of an offense beyond a reasonable doubt, it is your duty to find the Defendant not guilty of

9

that offense." "We presume that the jury followed the district court's instructions." *Kruckenberg*, 2008 ND 212, ¶ 24.

[¶23] The questioning of Detective Satermo showed that law enforcement did not receive any information from Sargent, or any witness, indicating Grensteiner "had nothing to do with the crimes." This line of questioning is no more prejudicial than the prosecutor's statement in *Kruckenberg*, commenting on the lack of evidence "offered" by the defendant. Given the jury instructions repeatedly emphasizing the State's burden and the substantial evidence supporting the guilty verdicts, we conclude Grensteiner was not prejudiced by the State's questions. *See Kruckenberg*, 2008 ND 212, ¶ 30; *Linner*, 2023 ND 57, ¶ 19 (noting that "[o]n multiple occasions the parties and the district court informed the jury of the correct burden of proof, including in the instructions," and that "[a]ny prejudice from the State's statements were minimized by the court's instructions"); *Smith*, 2023 ND 82, ¶ 18 (same). Even if the questioning was an error, the error did not rise to the level of obvious error.

V

[¶24] The criminal judgments are affirmed.

[¶25] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr