# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 194

State of North Dakota,

Plaintiff and Appellee

v.

Patrick Brian Gores,

Defendant and Appellant

## No. 20250055

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Douglas L. Mattson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justices McEvers and Tufte joined. Justice Bahr filed a dissenting opinion.

Tiffany M. Sorgen, Assistant State's Attorney, Minot, ND, for plaintiff and appellee; on brief.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant; on brief.

**State v. Gores**
**No. 20250055**

**Crothers, Justice.**

[¶1]   Patrick Brian Gores appeals from a criminal judgment entered after a bench trial, arguing insufficient evidence supports his convictions. Gores claims insufficient evidence supports his conviction of preventing arrest because he was not informed he was under arrest before officers began to restrain him. He also argues insufficient evidence supports his conviction of domestic violence because he did not willfully cause injury and he was acting in self-defense. We affirm the criminal judgment.

I

[¶2]   Gores was charged with preventing arrest, a class A misdemeanor, and domestic violence, a class B misdemeanor. A one-day bench trial was held, and the district court heard testimony from the victim, two officers, and Gores. The court received seven exhibits, namely photographs of the victim and two body camera videos.

[¶3]   At the end of the State's case, Gores moved for acquittal. The district court denied the motion. Gores renewed his motion at the close of the defense's case. The court took the matter under advisement and later denied the motion by order. The district court found Gores guilty of preventing arrest and domestic violence. Gores was sentenced to 360 days' imprisonment with all but 125 days suspended for 18 months of supervised probation for preventing arrest and a concurrent 30 days' imprisonment for domestic violence. Gores appeals.

II

[¶4]   Gores argues insufficient evidence supports his convictions because "he did not willfully cause his si[s]ter injury, he was acting in self-defense, and he was never informed he was under arrest when officers began to physically restrain him."

[¶5] "Our standard for reviewing the sufficiency of evidence is the same for both a bench trial and a jury trial." *State v. Nelson*, 2023 ND 217, ¶ 5, 997 N.W.2d 849. This Court's standard for reviewing a sufficiency-of-the-evidence challenge is well established:

> When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses. A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

*State v. Grensteiner*, 2024 ND 218, ¶ 9, 14 N.W.3d 587 (cleaned up).

[¶6] Unlike in a jury trial, "[a] defendant does not need to move for judgment of acquittal under N.D.R.Crim.P. 29 at a bench trial to preserve the issue of sufficiency-of-the-evidence for appeal." *State v. Smith*, 2024 ND 127, ¶ 4, 9 N.W.3d 683. Here, like in *Smith*, we refrain from deciding whether a Rule 29 motion made during a bench trial narrows the issues reviewable on appeal because the result would be the same. *Id*. ¶ 5 ("We do not decide here whether Smith's Rule 29 motion limits our review of grounds not specified to obvious error because the result here is the same when reviewed for obvious error or sufficiency-of-the-evidence.").

III

[¶7] Gores argues insufficient evidence supports his conviction of preventing arrest because he was not told he was under arrest before officers began restraining him. Gores argues the officers acted unlawfully because they failed to inform him of his arrest as required by N.D.C.C. § 29-06-17. The State relies on an exception in N.D.C.C. § 29-06-17, arguing officers did not have time to inform him of his arrest before he resisted.

[¶8]    Gores was convicted of preventing an officer "from effecting an arrest," a class A misdemeanor under N.D.C.C. § 12.1-08-02(1). Section 12.1-08-02, N.D.C.C., provides:

> 1. A person is guilty of a class A misdemeanor if, with intent to prevent a public servant from effecting an arrest of himself or another for a misdemeanor or infraction, or from discharging any other official duty, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting the arrest or the discharge of the duty. A person is guilty of a class C felony if, with intent to prevent a public servant from effecting an arrest of himself or another for a class A, B, or C felony, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting such an arrest.
> 2. It is a defense to a prosecution under this section that the public servant was not acting lawfully, but it is no defense that the defendant mistakenly believed that the public servant was not acting lawfully. A public servant executing a warrant or other process in good faith and under color of law shall be deemed to be acting lawfully.

[¶9]    Section 29-06-17, N.D.C.C., states:

> When making an arrest without a warrant, the officer shall inform the person to be arrested of the officer's authority and the cause of the arrest, unless:
>> 1. The person to be arrested then is engaged in the commission of an offense;
>> 2. Such person is pursued immediately after the commission of an offense or after an escape;
>> 3. Such person flees or forcibly resists before the officer has opportunity so to inform the person; or
>> 4. The giving of such information will imperil the arrest.

[¶10]    Officer Sullivan testified regarding the arrest:

> Mr. Gores, when we told him to stand up, he stated he was not going to jail and forcefully, like, sat down in the chair. I grabbed Mr. Gores' left arm. Ofc. Shaide grabbed his right arm and pulled him out of

3

the chair. He was still resisting, he wouldn't put his hands behind his back. He was still trying to pull away from us. Ofc. Shaide took him to the ground. He then trapped his arms underneath his chest and he wouldn't pull them out. I pulled his right arm out moving his wrist outwards. And put a handcuff on it and put it behind his back and Ofc. Shaide was able to handcuff the other arm . . . with a different set of handcuffs.

[¶11] Officer Sullivan's body camera video was entered into evidence. The video shows Officer Shaide walk towards Gores and speak to him. Gores was sitting in a chair near the corner of the room. Gores initially stood up, but immediately placed his hands in his pockets. Gores began digging around in his pockets. Shaide asked him to step closer to him, but Gores said, "nope." Gores then stated multiple times, "not going to jail" and sat down in his chair. Shaide said, "don't put your hands in your pockets," and quickly grabbed Gores's arms to restrain him.

[¶12] On cross-examination, Sullivan testified they had consent to enter the home. He also testified the force used to arrest Gores was reasonable.

[¶13] Shaide testified he advised Gores of the fact he was going to be placed under arrest. On cross-examination, Shaide testified: "I did not tell him that he was under arrest." He stated the arrest was "[more] of a de facto arrest." Shaide explained:

> Q: Instead of pulling Mr. Gores, why not just tell him you're under arrest?
> A: Because he verbally told me he wasn't going back to jail.
> Q: But Mr. Gores was never in the belief he was under arrest from your perception—
> A: Right. But the—the term I'm not going back to jail implies that he's going to resist arrest even if I tell him he's under arrest.
> Q: But you can't say that for certain without saying that—
> A: I can say that for certain, because that's exactly what that means.

[¶14] Gores testified officers did not tell him he was under arrest or being detained. On cross-examination, he testified:

Q: . . . So at some point you realized they were going to arrest you, and that's when you said, not going to jail, right?
A: I guess so. I guess so, yes. Yes.
Q: Okay and so when you realized that, you decided you weren't going to cooperate with them; is that correct? Yes or no.
A: No. Not really.
Q: No, you said you weren't going to cooperate with them; correct?
THE COURT: He's answered that. We'll move on.
Q: Okay.
THE COURT: Take the answer you got.

[¶15] A person is guilty of preventing arrest "if, with intent to prevent a public servant from *effecting an arrest* of himself or another for a misdemeanor or infraction, or from discharging any other official duty, he creates a substantial risk of bodily injury to the public servant or to anyone except himself[.]" N.D.C.C. § 12.1-08-02(1) (emphasis added). "It is a defense to a prosecution under this section that the public servant was not acting lawfully[.]" N.D.C.C. § 12.1-08-02(2). "When *making an arrest* without a warrant, the officer shall inform the person to be arrested of the officer's authority and the cause of the arrest, unless . . . [s]uch person flees or forcibly resists before the officer has opportunity so to inform the person[.]" N.D.C.C. § 29-06-17(3) (emphasis added).

[¶16] "An arrest is made by an actual restraint of the person of the defendant or by the defendant's submission to the custody of the person making the arrest." N.D.C.C. § 29-06-09. "[A]n arrest can occur before an officer formally informs a suspect he is under arrest. The proper, objective test asks whether circumstances existed that would have caused a reasonable person to conclude he was under arrest and not free to leave." *State v. Linghor*, 2004 ND 224, ¶ 14, 690 N.W.2d 201. The process of "making an arrest" or "effecting an arrest" contains many steps, which, if uninterrupted, result in an arrest or "the actual restraint of the person." During the process of "making an arrest" law enforcement is required to inform the individual of the cause of arrest unless the officer does not have an opportunity to do so. *See* N.D.C.C. § 29-06-17. "Preventing arrest" is the charged crime for preventing an officer from "effecting an arrest" at any point during the arrest process. Here, Gores began preventing the process of the arrest before the officer had the opportunity to inform Gores of the cause of his arrest.

5

[¶17] The officers testified, and the body camera videos show, that the officer began "effecting an arrest" of Gores by asking him to stand and move towards the officers. Gores stood, but immediately began digging in his pockets, and sat down, while stating "not going to jail." Gores "forcibly resist[ed] before the officer ha[d] opportunity" to inform Gores of "the cause of the arrest." This evidence, when viewed in a light most favorable to the verdict, is sufficient evidence to convict Gores of preventing arrest.

IV

[¶18] Gores argues insufficient evidence supports his conviction of domestic violence because he did not willfully cause bodily injury and he was acting in self-defense. He argues that he testified he was defending himself from his sister's "physical assault."

[¶19] Gores was convicted of domestic violence, a class B misdemeanor, under N.D.C.C. § 12.1-17-01.2(2)(a). Section 12.1-17-01.2(2)(a), N.D.C.C., states a person is guilty of the offense of domestic violence, a B misdemeanor, "if that person willfully causes . . . [b]odily injury to the actor's family or household member[.]" A "[f]amily or household member" means "a spouse, family member, former spouse, parent, child, persons related by blood or marriage, persons who are in a dating relationship, persons who are presently residing together or who have resided together in the past . . . ." N.D.C.C. § 14-07.1-01(4). A person engages in conduct "willfully" if "he engages in the conduct intentionally, knowingly, or recklessly." N.D.C.C. § 12.1-02-02(1)(e); N.D.C.C. § 14-07.1-01(7) ("'Willfully' means willfully as defined in section 12.1-02-02."). "A person is justified in using force upon another person to defend himself against danger of imminent unlawful bodily injury[.]" N.D.C.C. § 12.1-05-03. "An individual is not justified in using more force than is necessary and appropriate under the circumstances." N.D.C.C. § 12.1-05-07(1).

[¶20] Jane Doe testified she was visiting her mother in Minot, North Dakota, and staying at her residence. Gores is Jane Doe's brother and resides with their mother. Jane Doe testified that on June 7, 2024, she heard Gores having an argument with their mother and she went downstairs "to try to stop it." She

testified: "[H]e put his hand up and his fingers on my face, and he pushed me backwards and I fell against the stairs." When she fell against the stairs her "shoulder hit the railing and [] got a big bruise and then somehow [] scraped up [her] arm. . . ."

[¶21] On cross-examination, Jane Doe testified she did not "body check" or touch Gores before he pushed her. She testified:

> Q: Did you touch Mr. Gores in any way, whether that be pushing him or slapping him or anything? Did you touch him in any way?
> A: The only thing that touched him was my face, his hand on my face is what touched—the only contact I had with him.
> Q: When you came down the stairs, were you blocking any sort of entryway that would prevent Mr. Gores from walking around you?
> A: It's a very tight hallway. There's a doorway here, and there's a doorway here. He was standing by this doorway, and I was at the edge of the stairs.
> Q: So you were blocking his entry away, that would—
> A: He could have gone out to the garage.
> Q: But if he wanted to get by you, it wouldn't be possible because you were blocking his entryway; correct?
> A: I guess, yeah.
> Q: Did you do anything else to prevent Mr. Gores from getting out of that entryway?
> A: After I fell, I turned and ran out of there. He could have left at any time after that.

On redirect examination, she stated she was "pushed immediately after [she] went down the stairs."

[¶22] Gores testified at trial. He stated his sister "full on body checked [him]. Forced [him] back at least three feet" and he "pushed her with three fingers and a thumb, just to prevent this from happening again." He testified she pushed him back into the laundry room and the only way out was through her.

[¶23] Gores argues the evidence shows he pushed Jane Doe "to get past her when she was blocking his only exit from the laundry room." He argues that he was acting in self-defense and that this "minimal contact" was intended to create space for him to exit, "not to cause bodily injury," and therefore the evidence

does not show "willful intent to cause bodily injury but rather [] the intent to exit a situation where [he] was being physically blocked."

[¶24] Gores's intent to exit the situation is irrelevant. "Willful" conduct includes reckless conduct. A person engages in conduct "recklessly" "if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct[.]" N.D.C.C. § 12.1-02-02(1)(c). In the least, Gores engaged in reckless conduct that resulted in bodily injury to his sister.

[¶25] Gores asks us to reweigh the evidence. "When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses." *Grensteiner*, 2024 ND 218, ¶ 9 (cleaned up). Sufficient evidence supports the finding Gores willfully caused bodily injury, and he was not acting in self-defense. Sufficient evidence supports the conviction of domestic violence.

V

[¶26] Sufficient evidence supports the convictions of preventing arrest and domestic violence. We affirm the criminal judgment.

[¶27] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

**Bahr, Justice, dissenting.**

[¶28] I dissent from section III of the majority opinion because I disagree with the majority's application of N.D.C.C. § 29-06-17(3) to the undisputed facts. I join section IV of the majority opinion.

I

[¶29] With limited exceptions, N.D.C.C. § 29-06-17 requires an officer making an arrest without a warrant to "inform the person to be arrested of the officer's authority and the cause of the arrest." One exception to the statutory requirement

is when the person to be arrested "forcibly resists before the officer has opportunity so to inform the person." The district court and the majority rely on this exception to justify the arresting officers' failure to inform Gores that they were arresting him for domestic violence. The undisputed facts, demonstrated by two body camera videos, and confirmed by testimony, show the arresting officers had reasonable opportunity to inform Gores of the cause of his arrest but did not.

[¶30] Exhibit 7 is Officer Kristian Shaide's body camera video. The first segment of Exhibit 7 starts at 16:56:50. Officer Shaide opens an outside door of the residence and announces, "Police department." A lady invites the officers in. Initially you hear Gores talking but cannot see him. As Officer Shaide starts up the stairs, Gores appears, still talking. Officer Shaide states, "Hold on. We'll talk over here. Okay?" Gores goes and sits in a chair. Officer Shaide follows and asks Gores what is going on. (16:57:13.) Gores explains his version of the events while Officer Shaide asks questions. Their conversation lasts approximately three minutes. Officer Shaide tells Gores, "Just hang out here, buddy." (17:00:20.) The video picture turns as Officer Shaide turns to walk somewhere else; the video does not show where Officer Shaide went or who he talked to.

[¶31] The next video segment starts at 17:02:38. The video shows Officer Shaide walking towards Gores. Gores is sitting in the same chair he was sitting in earlier. Gores' hands are on the armrests, with a remote in his left hand. Officer Shaide states, "Hey, Patrick, do you want to hop up for me real quick?" Gores stands up, mumbles something like "Oh, jeez," and puts his hands in his pocket. Officer Shaide asks, "Can you just come over here for me?" Gores responds by repeating, "Nope. Nope. I'm not going to jail." Officer Shaide says, "Don't reach into your pockets." Gores pulls his hands out of his pockets and starts to sit in the chair. Both officers grab Gores' arms as he sits, Gores pulls his arms away, sits in the chair, and repeats, "Not going to jail." The officers grab Gores' arms again, pull him up, struggle, take him to the ground, struggle, and handcuff him. Gores resists the officers' actions, telling them to let go of him and other things difficult to understand. While the officers handcuff Gores, an officer states, "Now you're under arrest for preventing as well." (17:03:30.) At 17:04:13, speaking into his radio, Officer Shaide states, "1083 Patrick for domestic violence bodily injury and

preventing arrest." Conversation occurs between Gores and the officers as the officers escort Gores outside the house to the police vehicle. This segment of the video ends at 17:06:36.

[¶32] The last segment of the video covers from 17:13:32 to 17:18:54. It records conversations while Gores is being transported in the police vehicle. Exhibit 6, Officer Christian Sullivan's body camera video, covers from 17:02:37 to 17:05:20. The video confirms the events recorded in the second segment of Exhibit 7 from Officer Sullivan's position.

[¶33] The body camera videos show that neither officer informed Gores he was under arrest for domestic violence. The only mention of the domestic violence charge is after Gores is lying on the floor handcuffed. That statement, by Officer Shaide, was over the radio, not directed to Gores. The videos do not show if or when the officers told Gores he is under arrest for domestic violence.

[¶34] The officers' testimony at trial fills in the gap between the first and second segment of Exhibit 7. Their testimony also confirms neither officer placed Gores under arrest for domestic violence. Officer Shaide testified he initially spoke with Gores, and Officer Sullivan spoke to the victim. Officer Sullivan testified he took a recorded statement from the victim and took photos. He testified he then spoke with Officer Shaide, who stated they had probable cause to arrest Gores for domestic violence. Officer Shaide confirmed they decided to place Gores under arrest for domestic violence. This conversation logically occurred between the first and second segment of Exhibit 7. Thus, the officers had decided to place Gores under arrest for domestic violence when they jointly approached Gores.

[¶35] The State asked Officer Sullivan, "When you guys walked up to Mr. Gores when he was standing there, did you tell him he was under arrest or he was being detained?" Officer Sullivan responded, "I guess I—I didn't." The State then asked, "Did you hear the other Ofc. ever say you are under arrest, or you are detained, to Mr. Gores?" Officer Sullivan responded, "I—I don't recall."

[¶36] Officer Shaide testified he did not tell Gores he was under arrest. Although Officer Shaide initially indicated he placed Gores under arrest, he corrected his testimony after watching his body camera video. Defense counsel asked, "After

10

watching your own body cam footage, are you still confident that you told Mr. Gores he was under arrest?" Officer Shaide responded, "I did not tell him that he was under arrest."

[¶37] The following exchange occurred during Gores' testimony:

> Q    Did either of the police officers ever tell you that you were under arrest?
> A    No.
> Q    Did they ever say you were being detained?
> A    No.
>      . . . .
> Q    Did the police officers ever say you were under arrest?
> A    No.

[¶38] The videos show, and the testimony of the officers and Gores confirms, Gores did not attempt to run away from or hit or swing at the officers.

[¶39] Addressing N.D.C.C. § 29-06-17, the district court found "the body cam footage clearly showed the Defendant forcibly resisted before the officer had an opportunity to inform him. Thus, this Court finds the Defendant's action triggered a statutory exception, as set out in N.D.C.C. § 29-06-17(3), to the above cited statute."

[¶40] This Court's review of a sufficiency-of-the-evidence challenge is limited. Majority, ¶ 5. "When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *Id.* (quoting *State v. Grensteiner*, 2024 ND 218, ¶ 9, 14 N.W.3d 587). This Court has the same opportunity as the district court to review the body camera videos. The video evidence is undisputed. Moreover, "where the video evidence indisputably contradicts the trial court's findings, relying on such evidence and reversing the trial court's findings do not constitute reweighing." *State v. Boger*, 2021 ND 152, ¶ 18, 963 N.W.2d 742 (quoting *Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017)).

11

[¶41] Words used in any statute are to be understood in their ordinary sense. N.D.C.C. § 1-02-02; *State v. Lee*, 2025 ND 148, ¶ 13, 25 N.W.3d 763. The word "opportunity" is generally understood to mean "a set of circumstances that makes it possible to do something." *New Oxford American Dictionary* 1230 (3d ed. 2010). Thus, the issue is whether the officers had a reasonable opportunity to inform Gores of the cause of his arrest before he resisted. The undisputed evidence shows the officers had reasonable opportunities to inform Gores he was under arrest for domestic violence before they initiated the physical encounter.

[¶42] Based on their testimony, Officers Shaide and Sullivan decided to arrest Gores for domestic violence. After deciding to arrest Gores, the officers approached Gores, who was sitting in a chair with his arms on the armrests and a remote in his left hand. Neither officer informed Gores he was under arrest for domestic violence. They could have done so under the existing circumstances. Officer Shaide stated to Gores, "Hey, Patrick, do you want to hop up for me real quick." Gores complied; he stood up. Although either officer could have informed Gores he was under arrest for domestic violence, neither officer did so. Officer Shaide then asked, "Can you just come over here for me?" Gores responded by repeating, "Nope. Nope. I'm not going to jail," and then started to sit down. Still, nothing prevented the officers from informing Gores he was under arrest for domestic violence. Gores was not fleeing; Gores was not attempting to hit or swing at the officers. His hands were out of his pockets. Gores was simply attempting to sit down. Rather than let Gores sit and tell him he is under arrest for domestic violence, the officers grabbed Gores' arms, ultimately resulting in a struggle. Neither the district court nor the majority explain why the officers could not inform Gores he was under arrest for domestic violence when they approached him, before they told him to stand up, after he complied and stood up, or after he tried to sit back down in the chair. The undisputed evidence shows it was reasonably possible under the circumstances for the officers to inform Gores he was under arrest for domestic violence. Troubling, even after they took Gores down and handcuffed him, the officers still did not tell Gores he was under arrest for domestic violence. The State has not pointed to any evidence in the record that the officers complied with N.D.C.C. §

12

29-06-17's requirement an officer making an arrest without a warrant "inform the person to be arrested of . . . the cause of the arrest."

[¶43] Section 29-06-17, N.D.C.C., requires an officer making an arrest without a warrant inform the person to be arrested (1) of the officer's authority and (2) of the cause of the arrest. Gores knew the officers' authority. Officer Shaide opened an outside door and announced, "Police department." Even if Gores did not hear Officer Shaide's announcement, the body camera videos and the officers' testimony show both officers were wearing their patrol uniforms with their badge displayed. Thus, Gores knew the officers' authority. *See State v. Arntz*, 286 N.W.2d 478, 481 (N.D. 1979) ("Because the arresting officer was in uniform, we hold, as did the district court, that the requirement of stating his authority was met[.]").

[¶44] However, it is undisputed the officers never informed Gores he was under arrest for domestic violence. In *State v. Gagnon*, 207 N.W.2d 260, 264 (N.D. 1973), we held an arrest "was unlawful because the officer making the arrest without warrant did not inform the defendant of the cause of his arrest, as required by Section 29-06-17, North Dakota Century Code, except to say that they were investigating his activities." Gores knew the officers were investigating the victim's allegations. However, he was never told by the officers that he was under arrest for domestic violence.

[¶45] The majority cites *State v. Linghor*, 2004 ND 224, ¶ 14, 690 N.W.2d 201, for the proposition an arrest can occur "before an officer formally informs a suspect he is under arrest." Majority, ¶ 16. "The proper, objective test asks whether circumstances existed that would have caused a reasonable person to conclude he was under arrest and not free to leave." *Linghor*, ¶ 14. "An arrest is made by an actual restraint of the person of the defendant or by the defendant's submission to the custody of the person making the arrest." N.D.C.C. § 29-06-09. Here, the officers arrested Gores when they physically restrained him and handcuffed him. *State v. Woinarowicz*, 2006 ND 179, ¶ 27, 720 N.W.2d 635 (affirming defendant was arrested when officers placed her in handcuffs). It is undisputed, despite reasonable opportunity to do so, they did not inform Gores of the cause of his arrest before they restrained him.

13

[¶46] The majority asserts "[t]he process of 'making an arrest' or 'effecting an arrest' contains many steps, which, if uninterrupted, result in an arrest or 'the actual restraint of the person.'" Majority, ¶ 16. The plain language of N.D.C.C. § 29-06-17 requires the arresting officer "inform the person *to be arrested* of the officer's authority and the cause of the arrest[.]" (Emphasis added.) Under the statute, the officer must provide the statutorily required information before the arrest. There is no evidence the officers ever informed Gores he was being arrested for domestic violence, much less before they detained him.

[¶47] Gores was convicted of preventing arrest in violation of N.D.C.C. § 12.1-08-02(1). Section 12.1-08-02(2) provides, "It is a defense to a prosecution under this section that the public servant was not acting lawfully[.]" The officers were not acting lawfully when they grabbed Gores, took him to the ground, and handcuffed him without telling him the cause of the arrest. N.D.C.C. § 29-06-17; *Gagnon*, 207 N.W.2d at 264.

[¶48] The undisputed evidence does not allow a fact finder to draw an inference reasonably tending to prove Gores' guilt of preventing arrest and fairly warranting a conviction. There is insufficient evidence to support Gores' preventing arrest conviction.

II

[¶49] I would reject the district court's application of N.D.C.C. § 29-06-17(3) based on the undisputed facts. I would reverse the criminal judgment of preventing arrest.

[¶50] Douglas A. Bahr